**MEAD CORPORATION, Plaintiff,**

v.

**OSCAR J. BOLDT CONSTRUCTION COMPANY and Grunau Company, Inc., Defendants.**

No. C–3–80–473.

United States District Court, S. D. Ohio, W. D.

Feb. 4, 1981.

Charles J. Faruki, Paul L. Horstman, John Tate, Smith & Schnacke, Dayton, Ohio, for plaintiff.

Frank M. Root, Jr., Pickrel, Schaeffer & Ebeling, Dayton, Ohio, James R. Clark, Foley & Lardner, Milwaukee, Wis., for defendant Grunau Co., Inc.

Robert P. Bartlett, Jr., Estabrook, Finn & McKee, Dayton, Ohio, Harry L. Griffin, Jr. and John F. Elger, Griffin, Cochrane & Marshall, Atlanta, Ga., for defendant Oscar J. Boldt Construction Co.

DECISION AND ENTRY OVERRULING MOTION OF DEFENDANTS SEEKING AN ORDER OF COURT TRANSFERRING CAPTIONED CAUSE TO UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN AT MILWAUKEE; DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION, IN THE ALTERNATIVE, SEEKING ORDER OF COURT TRANSFERRING CAPTIONED CAUSE TO WESTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION, AT MARQUETTE; CASE TRANSFERRED TO WESTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION, AT MARQUETTE, PROCEDURES ORDERED OF CLERK OF COURTS OFFICE; TERMINATION ENTRY

RICE, District Judge.

## A. INTRODUCTION

The captioned cause came on to be heard upon the joint motion of Defendants, Boldt Construction Company and Grunau Company, Inc. (hereinafter referred to respectively as "Boldt" and "Grunau"), seeking an order of the Court transferring the captioned cause to the United States District Court for the Eastern District of Wisconsin at Milwaukee. In support of said motion, Defendants have submitted various affidavits and a memorandum, maintaining that transfer should be granted, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses, and in the interest of justice.

Conversely, Plaintiff has presented affidavits and a memorandum opposing such transfer, arguing that its choice of forum should not be lightly disregarded and that the Defendants have failed to carry their heavy burden of proving that the Southern District of Ohio is an inconvenient forum for all parties. In the alternative, should the Court feel that a transfer is appropriate, Plaintiff has also moved, under 28 U.S.C. 1404(a), for an order transferring this action to the United States District Court for the Western District of Michigan, Northern Division, at Marquette.

Based upon the reasoning and citations of authority set forth below, this Court overrules the motion of the Defendants, seeking an order of the Court transferring the captioned cause to the United States District Court for the Eastern District of Wisconsin at Milwaukee. Ruling further, this Court sustains Plaintiff's alternative motion, seeking an order of the Court transferring the captioned cause to the Western District of Michigan, Northern Division, at Marquette. The captioned cause is, accordingly, ordered transferred to the Western District of Michigan, Northern Division, at Marquette.

## B. FACTUAL FINDINGS

Uncontroverted allegations in the pleadings, as well as in the affidavits and memoranda filed by the parties, disclose the following relevant facts:

1. The Plaintiff, the Mead Corporation (hereinafter referred to as Mead), is an Ohio corporation with its principal place of business in Dayton, Ohio (within the geographical boundaries of the Southern District of Ohio), and with additional places of business located in Escanaba, Michigan, and Milwaukee, Wisconsin (Complaint, ¶ 1; Horstman affidavit, ¶ 5; Clark affidavit, ¶ 10)

2. The Defendant Boldt is a Wisconsin corporation with its principal place of business in Appleton, Wisconsin. (Lawson affidavit, ¶ 4) Appleton, Wisconsin, is within the jurisdictional boundaries of the Eastern District of Wisconsin.

3. Defendant Grunau is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin (Lawson affidavit, ¶ 7; Bohlmann affidavit, ¶ 2)

4. On or about September 1, 1979, Boldt entered into a contract with Mead, whereby Boldt was to perform certain construction work (the installation of certain equipment involved in the rebuilding of the back end of a large paper machine) at Mead's manufacturing plant in Escanaba, Michigan. (Lawson, ¶ 5; Complaint, ¶ 6) Boldt had previously entered into a sub-contract with Grunau, whereby Grunau was to perform

certain portions of the work on the Escanaba project, under the terms of the contract between Mead and Boldt. Specifically, Grunau was to furnish all labor, materials, tools, equipment, insurance and incidentals necessary to furnish and install certain piping. (Lawson affidavit, ¶ 7; Complaint, ¶ 17) The Plaintiff contends that Boldt breached the contract in certain stated particulars by, *inter alia*, failing to comply with and adhere to the 19 day shut-down period shown on the schedule submitted by Boldt to Mead and failing to complete the work described in the contract. (Complaint, ¶ 11) The Plaintiff contends that Grunau breached the sub-contract, made between it and Boldt for the benefit of Mead, in certain stated particulars by, *inter alia*, failing to adhere to the shut-down period agreed to between Boldt and Mead and failing to complete the work described in the sub-contract. (Complaint, ¶ 19) Mead alleges that the Defendants' failure to adhere to this shut-down schedule, resulting in the plant being closed in excess of the period of time agreed upon by the contract, caused it substantial monies in loss of profits and other costs. (Complaint, ¶ 12 and 21)

The Defendant Boldt claims, in its counterclaim, that Mead owes it the balance of the contract price and, in addition, breached its contract with Boldt by failing to timely and properly provide Boldt with equipment and engineering data as required by the contract. (Counterclaim of Boldt, filed December 3, 1980, ¶ 3 and 4)

The Defendant Grunau claims in its counterclaim that Mead owes it certain monies for work performed in accordance with the Boldt-Mead contract and, further, that Mead breached the terms of the Mead-Boldt contract by materially changing plans and specifications of various phases of the work during the course of construction, which substantially delayed and disrupted Boldt's performance of its obligations and caused it extra expense. (Counterclaim of Boldt, filed December 3, 1980, ¶ 3 and 5) The claims and defenses of Grunau rest largely upon alleged mistakes in and alterations to the bid drawings and specifications during the progress of the job including, but not limited to, the conflict between the design drawings and the equipment actually delivered to the job site by the Beloit Corporation, a primary supplier of equipment. (Clark affidavit, ¶ 7) In addition, Grunau has filed a cross claim against Boldt upon the sub-contract agreement, claiming the various breaches of same to its damage.

5. Eight of the Plaintiff's proposed witnesses live within the Southern District of Ohio, in Dayton, and are employed by the Mead Corporation. Five of these witnesses, who are likely to testify on the issue of liability, were present at the construction site in question during all or part of the construction work at Mead's Escanaba plant. Two of the eight are likely witnesses on the contractual issues. One of the eight, Allan Gradsky, a Certified Public Accountant, is the Plaintiff's expert on the issue of damages. (Horstman affidavit, ¶ 3 and 4)

An additional 20 of the Plaintiff's prospective witnesses live in Escanaba, Michigan, and are employed by the Plaintiff at its plant at that locale. Mead is willing to make these witnesses available, at trial within the Southern District of Ohio, at its own expense. (Horstman affidavit, ¶ 5 and 6)

6. None of Boldt's supervisory personnel in the Escanaba project were residents of Michigan (or Ohio, presumably). The majority of the supervisory personnel for Grunau were re-located from Wisconsin to the Michigan site for the duration of the project. Several of Grunau's supervisory personnel were from Michigan. All of Boldt's and Grunau's non-supervisory workers were residents of the Escanaba, Michigan, area. (Lawson affidavit, ¶ 9, 10, and 11)

7. All Grunau's and Boldt's prospective witnesses (19 for Boldt and 17 for Grunau, with some overlapping) are outside the subpoena power of the United States District Court for the Southern District of Ohio. All are residents of Wisconsin and all are seemingly within the subpoena power of the United States District Court for the East-

ern District of Wisconsin. (Clark affidavit, ¶ 4; Elger affidavit, ¶ 3)

8. The Marathon Corporation, Mead's project engineer, is located in the Eastern District of Wisconsin. Marathon may well be impleaded as a third-party defendant by Grunau. (Clark affidavit, ¶ 7)

9. The primary supplier of the equipment in question, the Beloit Corporation, is a resident of the Eastern District of Wisconsin.

10. The vast majority of the project drawings, specifications, correspondence, records and other documents are located within the offices of Boldt, Marathon and Grunau either in the Eastern District of Wisconsin or within 100 miles of the seat of that Court in Milwaukee. Mead maintains a certain percentage of these documents in its corporate offices in Dayton, Ohio, and in its plant offices in Escanaba, Michigan.

11. Only once prior to the completion of the construction of the project in question did any representative of Boldt travel to Ohio in connection with it. This visit, at the Plaintiff's request, involved a discussion or restructuring of the *proposed* contractual relationship between Mead and Boldt, upon which Boldt's previously submitted bid for the Escanaba project had been based. (Lawson affidavit, ¶ 12) This meeting appears to have been on June 29, 1979, prior to the awarding of the September 1, 1979, contract. Said meeting has been referred to as a negotiating session between Mead and representatives of Boldt. A meeting with Boldt and other bidders for the contract was previously held in May, 1979, in Escanaba. (Tucker affidavit, ¶ 4)

12. Telephone calls and correspondence were received by Mead in Dayton from representatives of Boldt, concerning the contract, both before and after the contract was signed. Invoices for payment, etc., were submitted by Boldt to Mead in Dayton, Ohio, and all payments thereon were made by check, issued by Mead in Dayton. (Tucker affidavit, ¶ 5–7)

13. The contract stipulated that Michigan law was to apply to any dispute arising under the contract.

14. The discussion and negotiations leading up to the execution of the sub-contract took place in the state of Wisconsin. (Bohlmann affidavit, ¶ 5) All the work performed by Grunau under the sub-contract was performed at the project site in Escanaba, Michigan. Grunau did not perform any services in, or send any representatives to, Ohio in connection with the project. (Bohlmann affidavit, ¶ 4)

15. The construction site in issue, of which a view might well be required by the trier of fact, due to the necessity of comparing the designs with the actual construction of a machine, is located in Escanaba, Michigan, less than 225 miles from Milwaukee, but more than 600 miles from Dayton. (Plaintiff's memorandum in opposition, page 22; Elger affidavit, ¶ 4)

16. All events surrounding the dispute in the captioned cause took place either in Escanaba, Michigan or in the Appleton, Wisconsin area. The cause of action, itself, where the facts constituting the actual breach took place, occurred in Escanaba, Michigan. (Facts gleaned from all affidavits and pleading)

C. *DISCUSSION OF APPLICABLE LAW*

28 U.S.C. § 1404(a) provides, in regard to change of venue, that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

According to the Supreme Court, the threshold consideration in ruling upon a § 1404(a) transfer motion is whether the action is one which could have been brought initially in the proposed transferee district. *Continental Grain Co. v. F.B.L.–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). 28 U.S.C. § 1391 provides that:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

Applying this statute to the facts set forth above, the Court concludes that the present litigation could have been commenced either in Dayton, where Mead, the only plaintiff resides, in the Eastern District of Wisconsin, at Milwaukee, where both defendants reside, or in the Western District of Michigan, Northern Division, at Marquette, where the claim arose. Consequently, should the Court decide that transfer is required, either of the latter two districts would be appropriate transferees under the rule of *Continental Grain Co., supra.*

In the case of *Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955), the Supreme Court distinguished the doctrine of *forum non conveniens* from the grant of power given by 28 U.S.C. § 1404(a) to federal courts. Section 1404(a) was held not to accomplish a codification of the doctrine of *forum non conveniens,* but rather to give the district court broader discretion than under said doctrine—to allow the court the power of transfer for the convenience of parties and their witnesses, in the interest of justice, whether dismissal under the doctrine of *forum non conveniens* would have been appropriate or not. *Id.* at 32, 75 S.Ct. at 546. *Forum non conveniens,* said the Court, traditionally involves dismissal of an action due to inappropriateness of the forum, whereas § 1404(a) achieves a much less harsh result by allowing transfer rather than dismissal. Consequently, the Court concluded, transfers should be granted upon a "lesser showing of inconvenience" than ordinarily required for a dismissal under *forum non conveniens. Id.* at 32, 75 S.Ct. at 546. Further, the Court noted that:

> This is not to say that the relevant factors have changed, or that the plaintiff's choice of forum is not to be considered, but only that the discretion exercised [under § 1404(a)] is broader. *Id.* at 32, 75 S.Ct. at 546.

██ This interpretation of § 1404(a) has been consistently followed and is still viable today. *Commodity Futures Trading Commission v. Savage,* 611 F.2d 270, 271 (9th Cir. 1979); see also countless cases cited in Shepards *United States Citations.* Accordingly, in determining whether the present action should be transferred to another district, the Court will consider those factors appropriate to the doctrine of *forum non conveniens,* while being attentive, however, to the lesser showing of inconvenience required in order to transfer pursuant to § 1404(a).

The Supreme Court, in *Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), stated that:

> The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. *Id.* at 507, 67 S.Ct. at 842.

The Court then outlined the following factors which should be evaluated in determining whether, in a particular case, *forum non conveniens* should apply:

> An interest to be considered and the one most likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* at 508, 67 S.Ct. at 843.

The applicable law is also a factor which must be considered by the Court:

> There is an appropriateness—in having the trial in a diversity case in a forum that is at home with the state law that must govern the case, rather than have a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. *Id.* at 509, 67 S.Ct. at 843.

In this case, the applicable law, by virtue of agreement of the parties to the contract, is that of Michigan.

Having carefully considered the facts of the present action in light of the above factors, the Court can only conclude that transfer to another district Court is re-

quired. Indeed, this case presents a situation which, in the words of the Court in *Transcontinental Service Corp. v. True Temper Corp.*, 319 F.Supp. 920 (S.D.N.Y. 1970), "a transfer should be ordered in view of the fact that little reason existed for the commencement of the suit in [the forum state] 'other than the unquestioned technical right of the plaintiffs to sue' there." *Id.* at 922.

The Court has closely analyzed the private interests of the litigants in this case, keeping in mind that the Supreme Court in *Gulf Oil Co., supra,* indicated that the plaintiff's choice of forum should seldom be disturbed unless the balance is strongly in favor of the defendant. This approach was followed by the Sixth Circuit in *Sun Oil v. Lederle,* 199 F.2d 423 (6th Cir. 1952). However, the Court feels, for reasons listed below, that such a burden is not required to be demonstrated herein. Even if such is required, this Court concludes that it has been met.

Initially, the Court emphasizes that the decision in *Gulf Oil Co., supra,* was rendered prior to the enactment of § 1404(a) in 1948. Consequently, only the harsh remedy of dismissal on a *forum non conveniens* theory, and not the alternative of transfer, was before the Court in that case. Likewise, the Court in *Sun Oil, supra,* in a brief, less than one page, *per curiam* opinion, referred only to *forum non conveniens* and not to § 1404(a). Furthermore, the following language in *Continental Grain Co., supra,* a later Supreme Court case (1960), appears to lessen the burden required of the defendant in a § 1404(a) situation, to the point of requiring him to show only that the forum to which he desires to transfer the litigation is the *more convenient one vis a vis* the plaintiff's initial choice:

> The idea behind § 1404(a) is that where a "civil action" to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make *one District Court more convenient than another,* the trial judge can, after findings, transfer the whole action to the *more convenient* Court. *Id.* 364 U.S. at 26, 80 S.Ct. at 1474 (Emphasis added).

Applying this latter standard to the present case, *this* District Court is clearly the least convenient forum for all parties. Although Dayton, Ohio, is the principal business office for Mead, that factor alone is not dispositive. Only eight of the potential plethora of witnesses currently live in Dayton, and consequently, the cost of transporting witnesses to this area will in itself constitute a substantial burden on all parties. Further, Plaintiff has advanced no significant reason for this forum to retain the case, beyond a bare assertion, as noted above, that the Plaintiff's choice of forum is entitled to great weight.

Even assuming the validity of Plaintiff's position, however, courts have ruled that:

> A large measure of deference is due to the plaintiff's freedom to select his own forum. Yet this factor has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff. *Chicago Rock Island and Pacific Railroad Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir. 1955), *cert. denied,* 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955). (citing *Josephson v. McGuire,* 121 F.Supp. 83 (D.Mass.1954).

An analysis of the documents before the Court indicates that none of the conduct upon which the present breach of contract action is based occurred in this district. In fact, defendant Boldt's sole contact with this jurisdiction occurred on June 29, 1979, at a meeting in Dayton arranged at Plaintiff's request. Defendant Grunau, a subcontractor for Boldt, appears to have had no contact at all with this state. Thus, even if *Gulf Oil Co., supra,* is viewed as placing high relevance upon a Plaintiff's choice of forum, much of that significance is removed where, as here, the cause of action has little connection with the forum chosen.

Both Plaintiff and Defendants have devoted abundant energy in an attempt to convince the Court that compulsory process of witnesses is a dispositive factor in determining the appropriate forum for this case. Although ordinarily, as specified in *Gulf Oil*

*Co., supra,* compulsory process should be considered, it is not of paramount importance herein. All the witnesses listed by Plaintiff (with the exception of CPA Allan Gradsky) are Mead employees, and as such may be assumed to be obedient to the commands of their employer. Similarly situated are the witnesses listed by Defendants. With the exception of two witnesses, all of those listed are either employees of a present party or a party likely to be added in the event of transfer. In addition, the deposition of any witnesses who are not parties may be taken and submitted to the Court in accordance with Fed.R. of Civ.Pro. 32(a)(3).

However, as previously indicated, the cost of transporting witnesses is an important factor in the present case. Transportation of over forty witnesses to this district, or depositions in lieu of court appearance, would be quite expensive for all parties. Transferring this action to Wisconsin would relieve the defendant's financial burden but would place upon Plaintiff a disproportionate expense.

Transfer to the District Court at Marquette (the Western District of Michigan, Northern Division), however, would appear to assist all parties by more fairly proportioning the overall burdens of the present litigation. Although some transportation of witnesses will still be required, the cost to the defendants, due to the relative proximity of Marquette, will be less prohibitive than if the trial should be held in Dayton. Further, the financial pressures upon plaintiff will be lessened in light of the fact that many of its witnesses and documents are located in Escanaba, Michigan. In addition, the Court considers highly relevant the fact that the cause of action arose in Michigan, and further that, should a view of the scene be necessary, such a procedure would be possible if the case were transferred to that jurisdiction. Plaintiff has already indicated that a view would be appropriate, due to the fact that a comparison of designs with the actual construction of a machine will be relevant in the proof of its case. Finally, in regard to sources of proof, much of the evidence will be documentary in nature and easily exchanged. As much of the pertinent documents are in Wisconsin or Escanaba, a transfer to Michigan will again assist all parties.

In ruling on the within motion to transfer, the Court has also considered the supplemental citations submitted by Defendant Boldt and by Mead. In essence, Defendant maintains that the present action is for a declaratory judgment and was initiated by Mead in an attempt to win the "race to the courthouse door." Consequently, Plaintiff's choice of forum should be entitled to slight weight. Plaintiff argues, however, that since the action is also for breach of contract, its choice of forum should be given deference, in accordance with authority previously cited to the Court. In view of the fact that the Court has determined that a transfer to Michigan would be appropriate, Defendants' contentions need not be addressed at this time. Even assuming that Plaintiff's complaint had been initiated in such a manner, any prejudice caused to defendants will be eased by a transfer of the action to the District in which the cause of action arose.

## D. *CONCLUSION*

Whereas a trial in the Southern District of Ohio, at Dayton, would represent maximum inconvenience to the Defendants and their witnesses, a trial in the Eastern District of Wisconsin, at Milwaukee, would represent similar inconvenience to the Plaintiff and its witnesses. One party's financial and logistical inconvenience would simply be substituted for another's. Optimum convenience to all parties lies in the forum, where, *inter alia,* the cause of action arose, where the situs of the breach is located, where the law to be applied will be that of the forum state, where access to documentary evidence is no more burdensome to one party than the other, and where a great majority of the crucial witnesses either reside or can, with minimal difficulty, attend the trial. The Court thus finds that for the convenience of the parties and witnesses, and in the interest of justice, a transfer to the Western District of Michigan, Northern Division, at Marquette, is warranted.

Accordingly, based upon the aforesaid facts, considered in light of all relevant authority, this Court overrules the motion of the Defendants, seeking an order of the Court transferring the captioned cause to the United States District Court for the Eastern District of Wisconsin at Milwaukee. Ruling further, this Court sustains Plaintiff's alternative motion, seeking an order of the Court transferring the captioned cause to the Western District of Michigan, Northern Division, at Marquette. The captioned cause is, accordingly, ordered transferred to the Western District of Michigan, Northern Division, at Marquette.

The Clerk of Courts of the Southern District of Ohio is ordered to take all necessary steps to effect a transfer of this action to the Western District of Michigan, Northern Division, at Marquette.

■ The captioned cause is ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.*

---

* This Court has assumed, for purpose of ruling on this § 1404(a) motion to transfer, that personal jurisdiction over both defendants and venue are proper. Indeed, a § 1404(a) transfer is necessarily limited to transfer of actions commenced in a district court where both personal jurisdiction and venue are proper. *Martin v. Stokes*, 623 F.2d 469 (6th Cir. 1980) This Court has not addressed the potential lack of in personam jurisdiction issue that might be raised by Boldt, who had minimal contacts with the State of Ohio and Grunau who, insofar as the facts of this case reveal, had no contact with the State of Ohio whatsoever. A challenge to this Court's in personam jurisdiction has not been raised; the Court has, therefore, not attempted to resolve this question. The point is academic, however. Assuming, arguendo, that a successful challenge had been raised to the Court's in personam jurisdiction over either or both of these defendants, the Court would have exercised its discretion, in the interest of justice, pursuant to 28 U.S.C. § 1406(a), to transfer this case to any district in which it could have been brought, to wit: based upon the discussion herein, to the Western District of Michigan, Northern Division, at Marquette. It is interesting to note that the law of Michigan would apply, regardless of whether transfer is had under § 1404(a) or § 1406(a), in that the parties have stipulated by contract that the law of Michigan is to apply.