**BORDEN, INC., Plaintiff,**

v.

**TEXACO, INC., Defendant.**

No. C–3–80–510.

United States District Court,
S. D. Ohio, W. D.

Dec. 3, 1981.

Thomas W. Hill, Emens, Hurd, Kegler & Ritter, Edward A. Matto, Walter W. Kocher, Columbus, Ohio, H. Blair White, Thomas F. Ryan, Sidley & Austin, Chicago, Ill., for plaintiff.

Rudolph Janata, Porter, Wright, Morris & Arthur, Columbus, Ohio, David A. Luttinger, White Plains, N. Y., Eric Watt Wiechmann, Cummings & Lockwood, Stamford, Conn., for defendant.

### DECISION AND ENTRY DENYING DEFENDANT'S MOTION TO TRANSFER; CONFERENCE CALL SET

RICE, District Judge.

I. *Introduction*

On February 19, 1981, this Court filed an entry in the above-captioned action, denying the motion of Defendant Texaco, Inc. (Texaco), to transfer the within case to the District Court for the Eastern District of Louisiana (Doc. # 29). The Court's decision was based primarily upon the fact that both parties had submitted inadequate factual data. Therefore, the Court granted the Defendant twenty-one days within which to file a renewed motion for transfer, and further designated certain items of information which needed to be set forth with some specificity, in the event that a renewed motion should be made. Pursuant to the Court's order, Texaco filed a renewed Motion to Transfer on March 17, 1981, accompanied by three affidavits from attorneys representing Texaco. Plaintiff Borden, Inc. (Borden) then filed a memorandum in opposition to the Renewed Motion to Transfer, and in addition, submitted the affidavits of several Borden attorneys and employees.

After a thorough examination of all of the materials presented herein, the Court

has concluded that its previous decision, denying transfer, must stand. Before articulating the reasons underlying this decision, however, the Court will first set forth certain facts which can be derived from the documents and affidavits filed with the Court.

II. *Applicable Facts*

In the Court's previous opinion, the following facts were set forth:

1. Plaintiff, Borden, Inc., is a New Jersey Corporation with its principal place of business in Columbus, Ohio. (Complaint, para. 1);

2. Defendant, Texaco, Inc., is a Delaware Corporation, has its principal place of business in New York State, and has done business in Ohio. (Answer, para. 2);

3. On or about March 23, 1972, Plaintiff and Defendant entered into an agreement whereby Defendant consented to sell Plaintiff certain quantities of natural gas. (Exhibit A attached to Complaint, pp. 1, 2);

4. The execution of the above contract followed protracted negotiations between Borden and Texaco, with the involvement of Texaco's New York Management. (Exhibits A, B, and C attached to Plaintiff's Memorandum Opposing Transfer;

5. In the September 3, 1980, Preliminary Pre-Trial Statement, Texaco expressed approval of the present forum, with one non-relevant exception.[1] (Defendant's Preliminary Pre-Trial Memorandum, p. 6);

6. Documentary evidence pertinent to this case is located in "numerous" geographic locations, among which are Columbus, Ohio, and New Orleans, Louisiana. (Doughty Affidavit attached to Plaintiff's Memorandum Opposing Transfer, p. 2; Exhibits A, B, and C attached to Plaintiff's Memorandum Opposing Transfer; Defendant's Preliminary Pre-Trial Memorandum, p. 8);

7. Plaintiff has purchased word processing equipment and computer capability for use in the present case. In addition, because of this litigation, Plaintiff has installed microfilm equipment in its administrative office in Columbus. (Doughty Affidavit, p. 2);

8. Plaintiff has hired several employees in Columbus, with the expectation that a substantial portion of their time will be devoted to the within case. (Doughty Affidavit, p. 2).

The memoranda and affidavits filed by both parties in connection with the renewed Motion to Transfer have not cast doubt upon the above facts, and have additionally disclosed that:

9. Texaco is presently, and at all pertinent times, has been, doing business in the Eastern District of Louisiana. (Defendant's Memorandum in Support of Renewed Motion to Transfer, p. 2; Luttinger Affidavit, para. 5, 11);

10. Of the documents reviewed by Texaco to date in connection with Borden's First Request for Production of Documents, approximately eighty-five percent (85%) are located in New Orleans and in other Texaco offices located in the Eastern District of Louisiana. (Jerz Affidavit, para. 3, 4). The majority of documents pertinent to Borden's other requests for document production are also located in New Orleans. (Jerz Affidavit, para. 6);

11. The documents which have been reviewed by Borden in connection with Texaco's First Request for Production of Documents are located in Columbus, Ohio, in Borden's Administrative headquarters and record retention facility. (Belville Affidavit, para. 2);

12. At the time of the filing of Borden's Memorandum Opposing the Renewed Motion to Transfer, Borden anticipated calling specific witnesses who reside in a variety of locations, including Ohio, California, Texas, Louisiana, New York State, and the Virgin Islands. (Hill Affidavit, para. 3a-f, para. 4,

---

1. In its Preliminary Pretrial Memorandum, dated September 3, 1980, Texaco stated that it was satisfied with the present forum. Texaco also indicated that "If at a later date other cases are brought in different fora concerning Texaco's curtailment of gas to its customers, Texaco will re-evaluate its present position." (Doc. # 12, p. 6).

8). In addition, Borden anticipated calling an unspecified number of engineers and geologists who conducted a 1979 analysis of Texaco's onshore Louisiana natural gas reserves. None of these persons, all of whom were employed by Texaco, are residents of either Louisiana or Ohio. (Hill Affidavit, para. 6, 7; Exhibit A Attached to Hill Affidavit) (These facts have not been disputed by Texaco);

13. Texaco has not indicated which witnesses it anticipates calling, but has stated that the witnesses required to establish Borden's prima facie case will be primarily from Louisiana. (Luttinger Affidavit, para. 5, 6, 7, 14, 16, 23, 27, 28, 30, 33);

14. Presently pending in the District Court for the Eastern District of Louisiana are two class actions, numbered 81–398, and 81–399, which have named Texaco, Inc., as a defendant. These actions were originally filed in the Louisiana state courts and were removed to the District Court at Texaco's request. At present, the Plaintiffs in both actions have filed motions to remand, requesting that the cases be returned to state court since the claims of each class member do not satisfy the $10,000 jurisdictional requirement of federal court. (Veters Affidavit, para. 2, 3, 4, Exhibits A–F Attached to Veters Affidavit; Exhibit C Attached to Hill Affidavit);

15. The complaints filed in the class actions referred to above indicate that the Plaintiffs represent classes consisting of persons who are customers of the Louisiana Power & Light Company. According to the complaints, the class members have been forced to pay increased electrical costs because Texaco failed to deliver the natural gas for which the Power Company had been contracted, thereby forcing the Power Company to purchase fuel at a higher, or additional cost. (Exhibits A and B Attached to Veters Affidavit, para. III, VII–XI);

16. After Texaco had indicated its satisfaction with the present forum, Borden decided to create a Litigation Support System in Columbus, Ohio, for use in the within action. Borden has hired outside consultants, who are in the process of creating a computer software system for the Litigation Support System. This software program, which is required for input and retention of computerized materials, is being designed to fit the existing computer hardware at Borden Headquarters in Columbus, Ohio. The computers in Louisiana and Houston, Texas, which could have been utilized if this action had been brought in Louisiana or promptly transferred after filing, are different than the Columbus computer for which the software program is being designed. If this action were transferred now, Borden would have to either redesign a new software program, or use portable terminals in Louisiana or Houston, which would be connected by telephone access to the main Borden computer center in Columbus. Additional expenditures which would be caused by this latter alternative, including the hiring of Louisiana counsel, the use of a WATS line between Louisiana and Columbus, and the rental of terminal equipment, would be at least four thousand dollars ($4,000.00) per month for the duration of this litigation. (Gray Affidavit, para. 5, 6, 9, 10, 11); Plaintiff's Memorandum in Opposition to Defendant's Renewed Motion to Transfer, p. 18);

17. By April 3, 1981, Borden had already paid outside consultants ten thousand dollars ($10,000.00) in connection with the creation of the software program for the Litigation Support System. In addition, the Systems Management Department staff for the Columbus offices of Borden had devoted over four months to the Litigation Support project. (Gray Affidavit, para. 1, 2, 6, 7);

18. Since Texaco expressed satisfaction with the present forum, Borden has hired four additional employees to work on this litigation. If this action is transferred to Louisiana, Borden will have to obtain counsel at the new situs, and educate them, thereby duplicating the educational process of its present Columbus counsel, who have spent approximately 1,760 hours on this case from August, 1980 to April 3, 1981. (Kocher Affidavit, para. 6, 7, 8, 9, 10).

III. *Discussion*

As indicated in the Court's previous opinion, in determining whether a motion brought under 28 U.S.C. § 1404(a) (1970) should be granted, *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955) indicates that the factors consistently applied in *forum non conveniens* cases should be utilized, except that a lesser showing of inconvenience may be required for a § 1404(a) transfer. *Id.* at 32, 75 S.Ct. at 546. The Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (*Gulf Oil*) indicated relevant criteria for *forum non conveniens* to be as follows:

> An interest to be considered, and the one most likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 508, 67 S.Ct. at 843.

In its Renewed Motion to Transfer, Texaco has set forth the following grounds as reasons for requiring transfer:

> (1) that the "sources of proof" for almost every major factual issue raised by the pleadings are located in South Louisiana and
>
> (2) the local interest in the subject matter of this action is greater in Louisiana than Ohio.

(Doc. # 33, p. 2). Each of these contentions will be separately addressed by the Court, together with any pertinent subpoints raised by Texaco.

A. *Sources of Proof.*

1. *Witnesses*

With respect to the sources of proof herein, Texaco has indicated that the vast majority of witnesses necessary to establish Borden's case must come from Louisiana. In the previous entry filed herein, the Court indicated that adequate documentation of anticipated witnesses and the relevant matters about which they would testify would be desirable upon a renewed transfer motion. (Doc. # 29, p. 5) Although the affidavits submitted by Texaco are not as rambling as Plaintiff contends, they do not indicate *Texaco's* intended witnesses, or indicate with specificity the matters about which those witnesses are expected to testify. Absent such information, it is difficult to assess the relative importance of the Louisiana witnesses, although Texaco has claimed, as a general matter, that their testimony will be important to Borden's case-in-chief. However, this latter point, even if true, somewhat misses the mark, at least insofar as it premises Texaco's motion to transfer upon alleged inconvenience to Borden. Other courts in this Circuit have indicated that assertions of an opposing party's inconvenience are not persuasive reasons justifying transfer. *Hayes v. Chesapeake & Ohio Railway Co.*, 374 F.Supp. 1068, 1069 (S.D.Ohio, 1973); *Holiday Rambler Corp. v. American Motors Corp.*, 254 F.Supp. 137, 139 (W.D.Mich.1966).

Moreover, assuming that many Louisiana witnesses will be required to testify herein concerning Texaco's activities and natural gas supplies in Louisiana (Luttinger Affidavit, para. 4–7, 12, 16, 17, 19, 24, 27, 28, 30, 33), several comments are in order. First, the affidavit of Thomas W. Hill indicates that Borden's principal witnesses in connection with the contractual negotiations between the parties, live primarily in Ohio and other locations besides Louisiana. (Para. 3(a)-(g)). In addition, Borden has indicated that the bulk of testimony relating to the alleged inadequacy of Texaco's gas reserves will be elicited from a group of engineers and geologists who conducted a 1979 analysis of Texaco's onshore Louisiana reserves. While these persons are apparently Texaco employees, none of them live in Louisiana. (Hill Affidavit, para. 6, 7; Exhibit A attached to Hill Affidavit). Finally, the Hill Affidavit indicates that the testimony of Texaco's New York management is anticipated. (Para. 8, para. 9). Be-

cause the pertinent witnesses appear to live in widely different geographic locations (at least insofar as the Court can determine on the basis of the information which has been submitted), the balance of convenience, or inconvenience as it may well be, appears to be divided equally between Borden and Texaco.

Furthermore, under *Gulf Oil*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the relevant factors with respect to witnesses appear to be availability of compulsory process for unwilling witnesses, and the cost of obtaining attendance of willing witnesses. *Id.* at 508, 67 S.Ct. at 843. Since most of the listed anticipated witnesses are employees of either Texaco or Borden, compulsory process does not appear to be a significant problem, whether this action is transferred to Louisiana, or remains in Dayton. Also, despite this Court's previous citation of the *Gulf Oil* standard, which indicates that the cost of obtaining the attendance of witnesses may be a factor in determining transfer, Texaco has not submitted information regarding anticipated costs, or demonstrating that transporting witnesses to Dayton would be unduly burdensome. Given this lack of information, as well as the fact that inconvenience, if any, would appear to operate equally against Borden, the Court cannot conclude that the presence of potential witnesses in Louisiana is a significant factor requiring transfer. As was previously emphasized, the information which has been submitted indicates that the possible witnesses herein will be drawn from a variety of geographic locations.

### 2. *Documentary Evidence*

Defendant has also argued that since the majority of documentary evidence pertinent herein is located in Louisiana, transfer to the Eastern District of Louisiana would be appropriate. In the previous entry denying transfer, this Court stated:

> In regard to documentary evidence, the Court does note that some of the Defendant's counsel are located in New York, and thus, regardless of forum, some

transportation of evidence may be inevitable. The location of documents is not at this time viewed as a significant reason requiring transfer. This factor may assume more importance, however, should Defendant illustrate a substantial cost for transportation beyond that which will in any event be necessary due to the location of Defendant's counsel.

(Doc. # 29, p. 5). In the Renewed Motion to Transfer, Texaco has not presented any evidence, as requested by the Court, of increased transportation costs due to the present location of the forum. This failure to submit information may imply that there are no anticipated extra costs beyond those caused by the participation of Texaco Counsel who are not from Louisiana. In this context, the only indication the Court has received from Texaco is that because Texaco will not be aware prior to trial of those documents necessary for its defense, it anticipates substantial costs for copying, transporting, and storing "perhaps millions" of documents. (Doc. # 33, p. 7). This figure appears to be slightly exaggerated, however, since Texaco has thus far produced only about one hundred thousand documents, even though over a million have been *reviewed*. (Jerz Affidavit, para. 4). In any event, the Court has confidence in counsels' ability to become familiar enough with their case prior to trial, to predict what documents might be required. Copying and storage expenses would probably be required regardless of trial location, but even if these expenditures would not be necessary, Texaco has failed to furnish the Court with any indication of the expense which would be anticipated beyond that already caused by the involvement of its New York and Connecticut counsel. Therefore, the Court does not find that Texaco has demonstrated that this trial location is burdensome due to the costs of copying, transporting, and storing documentary evidence.

Texaco has premised its documentary evidence argument primarily upon the fact that information regarding Texaco's gas reserves, real estate leases, interstate pipeline system, and exploration and development

activities is kept in Louisiana. (Luttinger Affidavit, para. 9, 12, 13, 15, 16, 19, 22, 33). In particular, Texaco has indicated that millions of documents, which are located mainly in Louisiana, must be reviewed in order to reply to Borden's First, Second and Third Requests for Production of Documents. (Jerz Affidavit, para. 3, 4, 5, 6). However, again, this argument is somewhat beside the point. What the Court was concerned with in its prior entry, was the burden of transporting documentary evidence to Dayton, Ohio. Although, for example, Texaco's counsel have reviewed one million documents in connection with Borden's First Request for Production of Documents, only about one hundred thousand of those have been sent to Borden. (Jerz Affidavit, para. 4). There is no indication that transporting those items has caused any particular burden on Texaco. Likewise, Borden has submitted information concerning the amount of time spent on discovery and the plethora of Borden documents thus far reviewed. (Belville Affidavit, para. 2). Since counsel for both parties would be required to spend many hours reviewing documents, regardless of where this action is located, information concerning the number of hours expended, and the voluminous amounts of documents reviewed, is simply irrelevant to the determination of whether transfer would be appropriate.

In any event, the inconvenience, if any, appears to be equally distributed between the parties. While the majority of Texaco documents appear to be in Louisiana, the documentary evidence required for Borden's response to Texaco's First Request for Production of Documents is located in Borden's administrative headquarters and record retention facility in Columbus, Ohio. (Belville Affidavit, para. 2). Thus, for each party, there will be a certain amount of copying, storage and transportation cost whether this action is heard here or in Louisiana. Therefore, given the fact that documentary evidence pertinent herein is located in both Ohio and Louisiana, and the fact that Texaco has not demonstrated an increased burden beyond that already caused by the necessity of transporting doc-

uments to its New York and Connecticut counsel, the Court can find no reason to alter its prior conclusion that the location of documents is not a significant factor requiring transfer of this action to Louisiana.

### B. *Local Interest in Subject Matter of Action*

Texaco has contended, apparently under the portion of 28 U.S.C. § 1404(a) (1970) which refers to the interest of justice, that transfer should be granted because the citizens of Louisiana have a greater interest in the subject matter of this action than do the citizens of Ohio. To the extent that the effects, if any, of Texaco's alleged failure to deliver gas as promised to Borden have impacted upon Louisiana's economy, Defendant may be correct in its assertion that Louisiana citizens have a greater local interest in the subject matter of this action. Conversely, since Columbus, Ohio, is the location of Borden's main headquarters, it may be argued that litigation of the present magnitude will have an economic effect upon this judicial district. However, even assuming that Louisiana citizens have a greater local interest in this action, other considerations outweigh that factor.

In the previous entry filed herein, the Court noted that Borden had hired additional staff and had installed machinery in its Columbus, Ohio office, for use in connection with the present litigation. The Court requested additional documentation from Borden of past expenditures and estimated additional costs of relocation, in the event of a renewed transfer motion by Texaco. Borden has supplied this information, which indicates that an increased cost of at least four thousand dollars ($4,000.00) per month will be incurred by Borden during the duration of this litigation if this action is transferred to Louisiana. (Gray Affidavit, para. 10). As was previously noted in this opinion, a good deal of money and employee time has been expended on the installation of Borden's Litigation Support System in Columbus, a large proportion of which occurred subsequent to Texaco's expression of satisfaction with the present forum. (Gray

Affidavit, para. 5, 7, 8, 9; Kocher Affidavit, para. 8). Borden has also indicated that if transfer is granted, new counsel in Louisiana would have to be hired and trained, thereby duplicating the educational process already undergone by Borden's present counsel. Again, much of this activity has occurred since Texaco agreed to the present forum. (Kocher Affidavit, para. 6, 7, 8, 9, 10). Texaco has argued that the convenience of attorneys is not a proper consideration in the assessment of transfer motions. This Court agrees. However, the expense of hiring and educating new counsel is an appropriate matter for evaluation under § 1404(a), as it directly relates to the convenience and private interest of a party to the litigation.

The affidavits which have been filed by Borden demonstrate that specific additional financial burdens would be imposed upon Borden as a direct result of the transfer of this action, and raise more than a mere possibility of prejudice to Borden's interests. While this Court is mindful of the local interest of the people in Louisiana, and is anxious to serve their needs as well as those of the parties herein, public interest, which is remote by its very nature, should not take precedence over the rights of parties intimately affected by the outcome of litigation, particularly when such deference would result in tangible prejudice. Accordingly then, the Court concludes that the local interest of the Louisiana State citizens is outweighed by the probability that the Plaintiff herein will be prejudiced by transfer. Accordingly, the risk of prejudice to Borden's rights indicates that it would not be in the interest of justice to transfer this action to the Eastern District of Louisiana.

At the time the previous entry denying transfer was filed, the Court was under the impression that actions similar to this case were pending in Louisiana State Court, and would be removed to federal court. The existence of these actions, and in particular,

the prospect of consolidation with this matter, were factors in the Court's decision to permit Texaco to file a renewed transfer motion.[2] In that context, the Court requested copies of the relevant documents filed in those actions in order that a determination might be made concerning whether those actions were sufficiently similar to the present lawsuit, to require transfer. (Doc. # 29, p. 7). The requested documents have been submitted, but have not strengthened the case for transfer. First, and most importantly, Texaco has conceded that the Louisiana class actions, which have been removed from state court to federal court upon Texaco's petition, are dissimilar enough from the present action to preclude consolidation. (Doc. # 33, p. 11). In addition, Motions to Remand have been filed with the District Court. Those motions, filed by the class-action Plaintiffs, are based on the fact that the ten thousand dollar ($10,000.00) jurisdictional amount required in federal court actions, has not been satisfied by each class member. (Veters Affidavit, para. 3, 4, 5; Hill Affidavit, para. 12; Exhibit C Attached to Hill Affidavit).

This Court does not wish to predict the ruling of another district court, particularly with respect to litigation with which this Court is unfamiliar, but on the basis of *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), it appears likely that the Louisiana plaintiffs will prevail on their Motion to Remand. Although it is possible that some of the Plaintiffs' claims may exceed ten thousand dollars, *Zahn* permits a district court to dismiss the entire class action where it is not feasible to define a class involving members with claims satisfying or exceeding the jurisdictional amount. *Id.* at 292, 94 S.Ct. at 507. That approach would seem to be appropriate in the Louisiana class actions involved, given the fact that ascertaining the amount of damage claimed by each of 500,000 class members would appear to be a

---

2. Consideration of this factor was also particularly appropriate in view of Texaco's indication in its Preliminary Pretrial Memorandum that instigation of related actions in other fora would cause re-evaluation of Texaco's agreement to venue in the present judicial district. *See*: Footnote 1, *supra*.

labyrinthine task. In fact, since the claimed period of damage extends through 1989 (Exhibit A Attached to Veters Affidavit, para. XIII, XVI), this Court cannot conceive how satisfaction of the jurisdictional amount could be demonstrated without speculation. Therefore, because consolidation no longer appears appropriate, and because of the likelihood that the Louisiana class actions will be remanded to state court, the pendency of related actions in the transferee court no longer appears to be a significant factor warranting transfer of the present action to the District Court for the Eastern District of Louisiana.

#### C. Other Factors

The final ground asserted by Texaco in support of transfer, is the unique legal system of Louisiana. In particular, Texaco has pointed out that a Louisiana Court will be more at home with certain concepts such as "good faith" performance under the Louisiana Civil Code. (Doc. # 33, p. 12). As Defendant has suggested, the Supreme Court in *Gulf Oil*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), did indicate that:

> There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 509, 67 S.Ct. at 843. However, the present action is essentially based on contractual claims, and even though Louisiana law may be applicable, there is no indication that the pertinent Louisiana law is either uncertain or unclear. *Van Dusen v. Barrack*, 376 U.S. 612, 645–646, 84 S.Ct. 805, 823–24, 11 L.Ed.2d 905 (1964). Absent these factors, which even if present, would probably not in themselves justify transfer, *id.* at 646, 84 S.Ct. at 824, the Court does not find the mere fact that Louisiana law must be applied to be a justification for transfer.

In the previous entry herein, which denied Texaco's request for transfer, the Court noted that the Plaintiff's choice of forum is entitled to some deference. *See: Gulf Oil*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). The Court has seen nothing in the materials submitted which would either outweigh that factor, or indicate that the within action should be transferred for reasons of convenience. On that basis, the present case may be distinguished from this Court's previous decision in *Mead Corp. v. Oscar J. Boldt Constr. Co.*, 508 F.Supp. 193 (S.D.Ohio 1981), wherein the Court determined that under the facts of that case, the plaintiff's choice of forum was entitled to little weight. *Id.* at 198. In particular, the Court found that little reason for suit in Dayton existed beyond the technical right to sue there, and that in fact, Dayton was the least convenient of the three fora which had been suggested by the parties. *Id.* Therefore, this Court sees no necessity to further consider the issue of Plaintiff's choice of forum, particularly since Defendant has failed to establish the requisite showing of inconvenience. As a final matter, the Court notes again that Defendant did earlier express satisfaction with the present forum. *See:* Footnote 1, *supra.*

#### IV. Conclusion

The preceding analysis has indicated that under an application of the factors outlined in *Gulf Oil*, 330 U.S. 501, 516, 67 S.Ct. 839, 846, 91 L.Ed. 1055 (1947), transfer of the within action to the Eastern District of Louisiana would not be appropriate. The affidavits submitted herein have demonstrated that the witnesses and documentary material are located in various locations, including Ohio and Louisiana, so that regardless of what forum is utilized, some inconvenience will be present. Moreover, despite being provided a second opportunity to refine the matters before the Court, Texaco has failed to submit materials demonstrating the additional burden, financial or otherwise, which is caused by location of the within action in Dayton. Plaintiff, however, has presented information indicating that transfer would cause substantial prejudice to its interests. Given this latter

fact, as well as Texaco's failure to sustain its burden of demonstrating that the within suit should be transferred, *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967), the Court finds that transfer would not be in the interest of justice. Therefore, Texaco's Renewed Motion to Transfer this action to the Eastern District of Louisiana is denied.