MEAD DATA CENTRAL,
INC., Plaintiff,

v.

WEST PUBLISHING
COMPANY, Defendant.

No. C–3–87–426.

United States District Court,
S.D. Ohio, W.D.

Dec. 15, 1987.

ferred back to this district on *forum non conve-niens* grounds.

David Greer, Armistead, W. Gilliam, Jr., Dayton, Ohio, Alan M. Wiseman, Marguerite Boyd, Washington, D.C., for plaintiff.

Vance K. Opperman, Joseph R. Kernan, Jr., Diane M. Helland, Richard A. Lockridge, Minneapolis, Minn., Gordon H. Savage, Andrew C. Storar, Dayton, Ohio, for defendant.

RICE, District Judge.

This case is before the Court on the Defendant West Publishing Company's Motion for Transfer of Venue (Doc. # 7). For the reasons set forth below, the Defendant's Motion is overruled in its entirety.

Plaintiff Mead Data Central, Inc. (MDC) commenced this antitrust action against Defendant West Publishing Company (West) on August 18, 1987. Two arguably related actions are currently pending in the District of Minnesota. In *West Publishing Co. v. Mead Data Central, Inc.*, West seeks a declaratory judgment preventing MDC from infringing upon certain copyrights allegedly held by West. *West Publishing Co. v. Mead Data Central, Inc.*, No. 4–85–931 (D.Minn. filed July 29, 1985). In *Bancroft–Whitney Co. v. West Publishing Co.*, Bancroft–Whitney seeks a declaratory judgment to the effect that West's copyrights in West's annotated compilation of Texas statutes are invalid. *Bancroft–Whitney Co. v. West Publishing Co.*, No. 4–86–473 (D.Minn. filed Dec. 16, 1985).[1] In addition, the case at bar is also similar to a previous antitrust suit filed by MDC against West in the Southern District of New York in 1976.

the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

---

1. This case was originally filed in the United States District Court for the Northern District of Texas. *Bancroft–Whitney Co. v. West Publishing Co.*, No. 3–85–2541–H (N.D.Tex. filed Dec. 16, 1985). However, in an Opinion and Order filed May 7, 1986, the Texas Court granted West's Motion to Transfer and transferred the case to

West asserts that two factors—the fact that this action is a compulsory counterclaim to the Minnesota copyright action and the fact that the doctrine of collateral estoppel bars relitigation of the transfer issue—mandate or require transfer of this action to the District of Minnesota.[2] West further asserts that the possibility of inconsistent decisions provides independent grounds for transfer. Finally, West asserts that the balance of convenience strongly weighs in favor of trial in Minnesota. The Court will examine each of Defendant West's assertions, seriatim.

## I. DISCUSSION

Defendant West has brought this motion pursuant to 28 U.S.C. § 1404(a) which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) is intended to "protect litigants, witnesses and the public against unnecessary inconvenience and expense...." *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 27, 80 S.Ct. 1470, 1475, 4 L.Ed.2d 1540 (1960). The seminal issue before the Court in this case is whether transfer to the District of Minnesota "is warranted by the convenience of parties and witnesses and promotes the interest of justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964).

■ "[T]he burden of showing the desirability of transfer is on the moving party." *Shapiro v. Merrill Lynch & Co.*, 634 F.Supp. 587, 589 (S.D.Ohio 1986). This burden is substantial. *See Nemmers v. Truesdale*, 612 F.Supp. 245, 246 (N.D.Ohio 1985). The movant must establish "that once all the relevant factors are scrutinized, fairness and practicality *strongly* favor the forum to which transfer is sought." *Rowe*

*v. Chrysler Corp.*, 520 F.Supp. 15, 16 (E.D. Mich.1981).

■ Before a transfer under § 1404(a) may be considered, it must first be established that the action could have been brought in the proposed transferee district court. *Continental Grain Co.*, 364 U.S. at 21–22, 80 S.Ct. at 1472. In the case at bar, the jurisdiction of the Minnesota court would be proper under 28 U.S.C. §§ 1331, 1332, 1337 and the venue of the Minnesota court would be proper under 15 U.S.C. § 22. Thus, this Court concludes that transfer to the District of Minnesota is permissible.

### A. IS TRANSFER MANDATED?

Defendant West makes two basic arguments in support of its assertion that transfer to the District of Minnesota is mandated. First, West argues that the relationship between MDC's claims in the case at bar and the issues raised by the Minnesota copyright action is such that MDC's claims constitute compulsory counterclaims. As MDC's claims are allegedly compulsory counterclaims, West asserts that transfer is mandated. Second, West argues that collateral estoppel bars relitigation of the transfer issue, and, thus, transfer to the District of Minnesota is mandatory.

#### 1. *The relationship of MDC's claims to the Minnesota copyright action*

Defendant West first argues that MDC's claims are compulsory counterclaims to West's copyright action in Minnesota. West asserts that as compulsory counterclaims, MDC's claims must be brought in Minnesota. Thus, West maintains that transfer of MDC's claims is mandatory.

■ Rule 13(a) of the Federal Rules of Civil Procedure governs compulsory counterclaims. Rule 13 provides in pertinent part:

---

**2.** Defendant West has moved for transfer under 28 U.S.C. § 1404(a) which allows a trial court *discretion* with respect to the transfer of actions. However, in alleging that the case at bar constitutes a compulsory counterclaim and that the Court is collaterally estopped from deciding against transfer to Minnesota, West seemingly

argues that this Court is without discretion. In other words, West argues that this Court has no choice but to transfer the action to Minnesota. With regard to the other grounds urged in support of transfer, however, the Court's discretion is properly invoked.

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

The Sixth Circuit has ruled that the test to be "applied in determining whether a counterclaim is compulsory is whether there is a logical relationship between the claim and counterclaim." *See United States v. Southern Construction Co.*, 293 F.2d 493, 500 (6th Cir.1961), *cert. granted, Southern Construction Co. v. Pickard*, 368 U.S. 975, 82 S.Ct. 478, 7 L.Ed.2d 437, *rev'd in part on other grounds*, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962). Among the factors which must be considered are whether the claims present "different legal, factual, and evidentiary questions." *Maddox v. Kentucky Finance Co.*, 736 F.2d 380, 383 (6th Cir.1984). In determining whether a particular claim is a compulsory counterclaim, a court must consider whether "the interests of judicial economy and efficiency would be served ... by requiring that the two claims be heard together." *Id.* In order to make such a determination in the case at bar, it is necessary for the Court to examine the nature of West's Complaint in the Minnesota copyright action and the nature of MDC's Complaint in the case at bar.

An understanding of the history of Defendant West and Plaintiff MDC is vital to an understanding of their respective Complaints. West is a corporation organized and existing under the laws of the state of Minnesota, with its principal place of business in St. Paul, Minnesota. Since before the turn of the century, West has engaged in collecting, selecting, compiling, arranging, and reporting the Opinions of many state and federal courts. West reformats and arranges the text of each Opinion it elects to publish in West's own style. It adds headnotes, parallel citations, and key numbers. In some instances, West corrects clerical errors. After West has completed its editing procedure, it assigns the report to one of the series of publications within its national reporter system by court and/or subject matter of the Opinion. West further categorizes and arranges its reports in each and every volume within each series. The volumes and pages are then numbered to allow judges, lawyers, and scholars to communicate precisely and efficiently the location of the specific text within a West report. West also publishes the statutes of various states. In addition, West is one of the major publishers of comprehensive legal digests of federal and state court opinions, publishes legal encyclopedias, and is a major publisher of legal case books in the United States. In recent years, West has introduced its WESTLAW service, a computer-assisted legal research service containing Opinions of state and federal courts.

Plaintiff MDC is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Miamisburg, Ohio. MDC's businesses include a computer-assisted legal research and reporting service, known as LEXIS, which makes available to subscribers opinions of the federal and state courts and statutes of the United States and the fifty states. LEXIS subscribers are located in all fifty states and the District of Columbia, and include private law firms, law schools, federal, state, and local government agencies, as well as the United States Courts. MDC is a subsidiary of the Mead Corporation.

The Minnesota copyright action was commenced on July 26, 1985, in the United States District Court for the District of Minnesota. West's claim arose when MDC announced that it intended to include "star pagination" within the text of LEXIS reports. Star pagination would allow a LEXIS user to cite to specific pages within one of West's reporters without ever seeing that reporter. West alleges that MDC's intended use of West's page numbers within the text of LEXIS reports will adversely affect the value of West's national reporter system publications. West's basic argument is that each publication's pagination is protected by the copyrights West holds

on that publication. Count One of West's Complaint asserts that MDC's intended use of West's page numbers will constitute copyright infringement in violation of the copyright laws of the United States, 17 U.S.C. § 101 *et seq.* West is also concerned that star pagination will confuse and mislead LEXIS users.[3] In addition, Count Ten of West's Complaint asserts that MDC's use of West page numbers will diminish the value of West's national reporter system publications and divert trade from West to MDC thus constituting misappropriation under the common law. Finally, Count Eleven of West's Complaint asserts that MDC's intended use of West page numbers constitutes unfair competition under the common law.

In its prayer for relief, West seeks a declaratory judgment to the effect that MDC's intended use of West's page numbers will violate each of the statutes noted in Counts One through Nine, and that such use will constitute an unlawful appropriation of West's property and unfair competition with West. West wishes the Minnesota court to declare that West owns certain copyrights and that MDC's intended acts will be an infringement of those copyrights. In order to prevent the copyright infringement and other violations from occurring, West seeks a preliminary[4] and permanent injunction enjoining MDC from including West's page numbers in the text of LEXIS reports. West requests that the court issue preliminary and permanent injunctions enjoining MDC from using *any* material contained in the LEXIS database which results from MDC's: infringement of copyrights belonging to West, false representation of LEXIS reports, deceptive use of West page numbers, and/or misap-

---

**3.** West notes that the inherent qualities and characteristics of LEXIS reports are not identical to those of West reports. Count Two of West's Complaint in the Minnesota copyright action asserts that MDC's use of West's page numbers will deceptively lead LEXIS users to believe that the LEXIS reports are identical to the West reports. It is alleged that this use of West's page numbers will constitute false representation in violation of the Lanham Act, 15 U.S.C. § 1125(a). Count Three of West's Complaint asserts that MDC's intended use of West's page numbers will cause confusion regarding the source of LEXIS and its association with West, and, thus, constitute a deceptive trade practice in violation of the Minnesota Deceptive Trade Practices Act (MDTPA), Minn.Stat. § 325D.44, subdivision 1(2), (3). Count Four alleges that MDC's use of West's page numbers within the text of LEXIS reports will deceptively represent that the LEXIS reports displayed on a terminal screen or printed on a printer are identical to the referenced West reports, and, as a result, will constitute a deceptive trade practice in violation of the MDTPA, Minn.Stat. § 325D.44, subdivision 1(4). In Count Five of its Complaint, West asserts that the MDC's use of West page numbers within the text of LEXIS reports will deceptively represent that the LEXIS reports displayed on a terminal screen or printed on a printer contain characteristics and benefits included in West reports, when in fact, LEXIS reports do not contain such characteristics and benefits. West argues that such use will constitute a deceptive trade practice in violation of the MDTPA, Minn.Stat. § 325D.44, subdivision 1(5). Count Six of West's Complaint alleges that MDC's intended use of West's page numbers within the text of LEXIS reports will

pass off such reports as identical to the referenced West's reports, and, thus, constitute a deceptive trade practice in violation of the MDPTA, Minn.Stat. § 325D.44, subdivision 1(1). In Count Seven of its Complaint, West asserts that MDC's use of West's page numbers within the text of LEXIS reports will disparage West reports by falsely and deceptively representing that an inferior product, LEXIS reports, is identical to the referenced West reports. Plaintiff alleges that this use will constitute a deceptive trade practice in violation of the MDPTA, Minn. Stat. § 325D.44, subdivision 1(8). Count Eight alleges that MDC's intended use of West page numbers will create misunderstanding in the minds of LEXIS users as to the characteristics, sponsorship and benefits of such opinions, and, thus, constitutes a deceptive trade practice in violation of the MDPTA, Minn.Stat. § 325D.44, subdivision 1(12). Count Nine of West's Complaint asserts that MDC's use of West page numbers will directly or indirectly misrepresent that West is the originator of LEXIS reports and that the inferior LEXIS reports displayed on a terminal screen or printed on a printer are identical to the superior quality of the referenced West reports. West asserts that this use will constitute an unlawful trade practice in violation of the Minnesota Unlawful Trade Practices Act, Minn.Stat. § 325D.13.

**4.** The Minnesota court has granted West's motion for a preliminary injunction to enjoin MDC's alleged infringement and the Eighth Circuit has affirmed the district court's Order. *West Publishing Co. v. Mead Data Central, Inc.,* 616 F.Supp. 1571 (D.Minn.1985), *aff'd,* 799 F.2d 1219 (8th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987).

propriation of of West's property. West prays that the Minnesota district court order the impoundment and destruction of all infringing materials. West also seeks statutory damages under Count One, the costs of the suit, including reasonable attorney's fees, and punitive damages. In addition, West requests that the court award any further relief which the court decrees just and equitable.

This Court concludes that the thrust of the Minnesota copyright action is to prevent MDC's use of star pagination. West's success in the Minnesota action will basically turn upon the validity of its copyright claims. The focus of the Minnesota cause of action is upon the acts of MDC and the results arising therefrom.

In the case at bar, MDC alleges that West has engaged in wrongful and willful acts which have resulted in the acquisition and maintenance of a wrongful monopoly, the exclusion of competition, and the denial of access to an "essential facility." MDC argues that West has engaged in a series of anti-competitive acts which are all part of a plan to monopolize and dominate the business of reporting the lower federal court and state court opinions, state statutes, and related legal research materials. MDC asserts that over the years West has systematically suppressed competition by acquiring competitors. MDC further asserts that West has consolidated its monopoly power and position by means of various restrictive and anti-competitive practices, including: refusals to deal, exclusive contracts, manipulation of copyright claims, and suppression of competition in the secondary market for legal materials. West has allegedly sought to insulate itself from competition by refusing competitors access to its publications.

MDC asserts that LEXIS provides actual and direct competition to West for the retrieval of judicial opinions, state statutes, etc. The Complaint in the case at bar asserts that since MDC's introduction of LEXIS, West has engaged in ongoing efforts to maintain and enhance its monopoly position. West has allegedly sought new or extended exclusive contracts; dissuaded employees of the federal and state courts, government agencies, and private companies from cooperating with MDC; engaged in false and misleading advertising and disparagement of LEXIS; used MDC's trade secrets and copied MDC's user interface design and system; and engaged in predatory pricing with regard to its WESTLAW service.

MDC's key assertion is that at the time of the introduction of LEXIS in 1973, and continuing to the present, West has held a monopoly or attempted to obtain a monopoly position nationwide and in the individual states in numerous lines of interstate commerce. West allegedly holds or has attempted to obtain a monopoly position in the following markets: published reports of judicial opinions and statutes; legal research materials and aides for finding federal and state court opinions; and computer-assisted legal research and reporting systems.

Plaintiff MDC's first cause of action alleges that West has violated § 2 of the Sherman Act, 15 U.S.C. § 2, in that it has monopolized and continues to monopolize the markets noted above (as well as various submarkets within said markets) by controlling and refusing access to the published lower federal court and state court opinions which constitute an essential facility. MDC claims that West has an obligation to make its collection of lower federal court and state court opinions and statutes available to competitors and potential competitors on nondiscriminatory and reasonable terms. The Complaint's second cause of action asserts that West has violated §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, by entering into contracts in restraint of trade, and by monopolizing the previously noted markets. MDC's third cause of action asserts that Defendant West has violated §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, by attempting to monopolize and continuing to attempt to monopolize the nationwide and state markets previously described. The Plaintiff's fourth cause of action alleges that West has violated the antitrust, unfair competition, and common laws of the states of the United States by entering into contracts in restraint of trade

and by monopolizing and attempting to monopolize the previously described markets. MDC's fifth cause of action asserts that West has violated the Lanham Act, 15 U.S.C. § 1125, by falsely disparaging and describing the LEXIS service of MDC and by falsely describing the attributes of its own service, WESTLAW, both in absolute terms and in comparison to LEXIS.

In its prayer for relief, MDC seeks a final judgment declaring that West's collection of published lower federal court and state court opinions and statutes constitute an "essential facility" which must be made available to competitors and potential competitors on non-discriminatory and reasonable terms and that West's refusal to provide access to such judicial opinions and statutes is in violation of § 2 of the Sherman Act. In addition, MDC wishes the Court to permanently enjoin West from refusing to allow MDC to have equal access to West's published opinions of the lower federal courts and state courts and to state statutes. Further, MDC seeks a declaration that West has entered into contracts in restraint of trade and monopolized and attempted to monopolize the markets described above in violation of §§ 1 and 2 of the Sherman Act. Plaintiff further requests that this Court declare that the opinions of the lower federal courts and state courts, as altered by West in conjunction with the courts, and the statutes of the states, including titles and section numbers, are not subject to copyright, and that West's alleged copyright claims are therefore invalid. Finally, MDC seeks an award of actual and treble damages pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15 and an award of reasonable costs and expenses, including attorney's fees, incurred in prosecuting this action, pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15.

The Court concludes that the thrust of this Complaint is intended to punish West for past antitrust violations and to prevent future antitrust violations. MDC's claims with regard to the validity of West's copyrights are but one element of many to be considered in determining whether West has indeed engaged in anti-competitive activities. The focus of this case is upon the acts of West.

This Court concludes that the claims of West and the claims of MDC are not related in such a way as to make MDC's claims compulsory counterclaims under Rule 13(a). The legal questions posed by the two Complaints are clearly dissimilar. Antitrust law plays no part in the Minnesota copyright action. While copyright law may well be considered in the case at bar, it will not be the focus of the case.

The factual questions posed by the two Complaints are also dissimilar. The Minnesota copyright action is extremely narrow in its scope. The key factual issues are whether the page numbers contained in West reporters are copyrightable, whether West has properly copyrighted said page numbers, and whether MDC's use of said page numbers would constitute an infringement of West's copyright. West's history is basically irrelevant to these issues as are its policy of acquiring other corporations, its pricing policy, and its market share. West asserts that the discovery in the Minnesota copyright action has been very broad. However, the issues in a particular case are framed by the pleadings, not by the scope of discovery.

The factual issues presented by the case at bar are quite broad. In determining whether West has engaged in anti-competitive practices, the trier of fact will be required to consider the firm's history. It will be necessary to examine what companies were acquired by West and why they were acquired. Pricing policies must also be considered. West's market share will be a key factor as will West's motive in taking certain actions. None of these issues is relevant to the Minnesota copyright action. The issue of the validity of West's copyrights may well present some factual questions in this case; however, the answers to such questions will very likely have little impact upon the outcome of the case as a whole. The validity or invalidity of West's copyrights is not dispositive with regard to whether West has violated the nation's antitrust laws.

The evidentiary questions presented by the two claims are also for the most part unrelated. An enormous amount of evidence which is quite relevant to the antitrust claim will be completely irrelevant to the copyright claim. The difference in the scope of the claims is the key.

As noted above, judicial economy and efficiency are important considerations in determining whether a particular claim constitutes a compulsory counterclaim. In this case, Defendant West argues that judicial economy requires that the two Complaints be litigated in one forum. This Court cannot agree. Discovery in the Minnesota copyright action is nearly complete. Even if this Court were to transfer the case at bar, as both sides want the Minnesota copyright case to go forward, the chance of the two actions being consolidated is virtually nil. The Court does not dispute West's claim that after two years of litigation, Judge Rosenbaum, Magistrate Cudd, and Special Master Younger of the District Court for the District of Minnesota are intimately familiar with the law of copyright and the law of unfair competition and misrepresentation. Nor does the Court doubt that those individuals are intimately familiar with the facts of the Minnesota copyright action. Once again, however, it is important to remember that the case at bar is much broader in scope than the Minnesota copyright action. The issues of fact and law presented by the two cases are quite different.[5]

Based upon the foregoing, this Court concludes that the Minnesota copyright action and the case at bar are simply lacking the logical relationship required of a compulsory counterclaim. This Court cannot conclude that judicial economy and efficiency would be served by hearing the two claims together. Accordingly, this Court holds that the Complaint now before it is not a compulsory counterclaim under Rule 13(a), and, thus, transfer to the District of Minnesota is *not* mandated.

### 2. Collateral Estoppel and the Transfer Issue

West further argues that the decision transferring a prior antitrust action by MDC against West from the Southern District of New York to the District of Minnesota mandates transfer as a matter of collateral estoppel.

In 1976, MDC filed an antitrust action against West in the United States District Court for the Southern District of New York. At that time, New York was MDC's principal place of business. Many of the allegations made by MDC in the New York litigation are quite similar to those made in the case at bar. Subsequent to MDC's filing of the New York action, West moved for transfer to the District of Minnesota on the grounds that Minnesota was the most convenient forum. On March 22, 1978, the New York court granted West's Motion for Transfer. Shortly thereafter, MDC filed a notice of dismissal pursuant to Fed.R.Civ. P. 41(a)(1).

West argues that the New York court has settled the issue of whether in a monopolization action by MDC challenging West's copyrights, mergers, and business activities, the district that contains West's headquarters is more convenient and appropriate for trial than the district that contains MDC's headquarters. West notes that the parties to the earlier action were identical and asserts that the issue presented was identical to that presented in the case at bar.

---

**5.** This Court does recognize that there may be some practical problems with regard to overlapping discovery, but notes that overlapping discovery cannot be equated with overlapping evidence. The Court believes that any such discovery problems can be worked out to the satisfaction of all. Neither MDC nor West will be forced to provide duplicate discovery. When making requests for discovery, both parties should be extraordinarily vigilant with respect to avoiding a request for discovery already pro-

vided in the Minnesota action. If either party receives a request for information which has already been provided, that party should immediately so indicate to opposing counsel. Any discovery request that is not first scrutinized will subject the party making the request to sanctions if the information sought has previously been provided and if the party from whom the information is sought has incurred expenses in arguing that the discovery is duplicative and, therefore, unnecessary.

■ "Collateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981). "A 'valid and final judgment' is necessary before collateral estoppel can be invoked." *See City of Cleveland v. Cleveland Electric Illuminating Co.,* 734 F.2d 1157, 1166 (6th Cir. 1984) (*citing Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)). There is authority to the effect that "orders granting or denying motions to transfer under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) are not immediately appealable under 28 U.S.C. § 1291 as collaterally final orders." *Nascone v. Spudnuts, Inc.,* 735 F.2d 763, 772 (3d Cir.1984). *See also Muchard v. Berenson,* 307 F.2d 368, 369 (5th Cir.1962) ("[T]he Order of Transfer was not a final judgment, and the rules of res judicata apply only to final judgments...."). There is also authority to the effect that "[t]he general rule is that neither res judicata nor collateral estoppel is traditionally applicable to a voluntary dismissal." *See Markham v. Anderson,* 465 F.Supp. 541, 543 (E.D.Mich.1979). *See also In Re Piper Aircraft Distribution System Antitrust Litigation,* 551 F.2d 213, 219 (8th Cir.1977) ("Neither res judicata nor collateral estoppel is traditionally applicable to a voluntary dismissal."). Thus, if this Court found it necessary to rule upon the finality of the Order of Transfer and the availability of the doctrine of collateral estoppel, it is quite likely that the Court would rule in MDC's favor.

■ However, even assuming *arguendo* that this Court were to find that the Order of Transfer was a final judgment and that collateral estoppel could be applied, this Court would still be unable to conclude that collateral estoppel compels this Court to transfer the case at bar to the District of Minnesota. As noted above, "[c]ollateral estoppel requires that the *precise* issue in the later proceedings have been raised in the prior proceeding...." *Spilman,* 656 F.2d at 228 (emphasis added). The case at bar presents a different issue than that presented by the New York action. The District Court for the Southern District of New York determined that the District of Minnesota would provide a more convenient forum in 1978 than the Southern District of New York. This Court is *not* faced with weighing the relative merits of trial in the late 1970's in the District of Minnesota against those of trial in the Southern District of New York. Instead, this Court is faced with the issue of whether the case at bar should be transferred *today* from the Southern District of Ohio to the District of Minnesota.

By its very nature, the decision to transfer under § 1404(a) is extremely fact sensitive. Circumstances have changed since the New York court made its decision in 1978. Further, the New York decision was based at least in part upon the need for "a central geographic location for trial." The state of Ohio would provide at least as convenient a forum for witnesses located across the nation as would Minnesota. The same cannot be said for the state of New York.

Based upon the foregoing, this Court concludes that the doctrine of collateral estoppel does not mandate transfer to the District of Minnesota.

**B. DO THERE EXIST INDEPENDENT GROUNDS FOR TRANSFER, INVOKING THE DISCRETION OF THE COURT, YET NOT INVOKING THE "BALANCE OF CONVENIENCE" ANALYSIS REQUIRED UNDER 28 U.S.C. § 1404(a)?**

West next argues that certain factors above and beyond the convenience of the parties compel transfer, to wit: the possibility of results in this case which are inconsistent with those of the Minnesota copyright action and/or with those of the *Bancroft–Whitney* action.

*1. The Minnesota Copyright Action and Conflicting Results*

■ Defendant West first argues that, absent transfer, the parties face the prospect of results which conflict with the re-

sults of the Minnesota copyright action. It is true that MDC asks this Court to declare that West's copyright claims to judicial opinions are invalid and that West asks the Minnesota Court to declare that West's copyright claims to judicial opinions are valid. However, because of the timing of the cases and the availability of collateral estoppel, conflicting results cannot occur. It may well be that the Minnesota action, having been filed prior to this case and coming on for trial prior to the instant action will, by virtue of a judgment in favor of West in the Minnesota case and the preclusive effect of the doctrine of collateral estoppel, deny to Plaintiff MDC the right to ask this Court to void the copyrights.

It is also possible that the Minnesota action will, by virtue of a judgment in favor of MDC in the Minnesota case and the preclusive effect of the doctrine of collateral estoppel, either deny to Defendant West the right to ask this Court to conclude that West's page numbers are copyrightable (should West file a counterclaim in the case at bar), or, at the very least, make litigation of the issue of copyrightability unnecessary.[6] Regardless of the outcome of the Minnesota action, should judgment be entered in that action prior to the conclusion of the case at bar, this Court is bound by the Minnesota court's judgment with regard to copyrightability.[7] Conflicting results are, quite simply, impossible as a legal matter. Accordingly, this Court concludes that the possibility of conflicting results does not compel transfer.

### 2. The Bancroft–Whitney Action and Conflicting Results

West next asserts that the existence of the Bancroft–Whitney action compels transfer. Once again, West argues that the existence of another action raises the possibility of inconsistent and conflicting determinations. West's basic argument is that the subject matter of the two actions is so similar that they must be heard together despite the fact that MDC is not a party to the Bancroft–Whitney action.

■ Much of the foregoing analysis of the Minnesota copyright action is also applicable to the Bancroft–Whitney action. The Bancroft–Whitney action is extremely narrow in its scope. That action deals solely with West's copyrights in West's annotated compilation of Texas statutes. The case at bar is fundamentally an antitrust action. The questions of law, fact, and evidence raised by the two cases are dissimilar. This Court cannot conclude that judicial economy and efficiency would best be served by requiring that the two cases be heard within the same court.

■ Further, this Court cannot conclude that the specter of inconsistent results is dispositive with regard to the issue of transfer. It is true that because MDC is not a party in the Bancroft–Whitney action, MDC probably would not be collaterally estopped from relitigating the issue of

---

**6.** It is important to note, once again, that the outcome of the Minnesota copyright action will not be dispositive in this case. Even assuming, arguendo, a finding that West's copyright(s) is valid, and, further assuming arguendo that a copyright is deemed to be an essential facility and, by its very nature, a legally sanctioned monopoly not subject to the type of reasonable restrictions that a court rendering a judgment in an antitrust case can place upon other "essential facilities," the Court in this case, should MDC prevail, can and must provide MDC relief from any other anti-competitive acts in which West has engaged, including, inter alia, a claim of misuse of a valid copyright. West's alleged denial of access to an "essential facility" is but one of the anti-competitive acts with which West is charged. Regardless of the outcome of the copyright claims, this Court can certainly provide relief to MDC, if it sustains its burden of

proof in this case, for West's alleged entry into contracts in restraint of trade, predatory pricing practices, etc. To put it simply, the action at bar can survive a Minnesota decision in West's favor. Depending upon the result obtained in the Minnesota copyright action, the parties may wish to argue in a motion to dismiss or in a properly documented motion for summary judgment, the preclusive effect of such a judgment upon either a portion or the entirety of the Complaint in the case at bar.

**7.** Likewise, regardless of the outcome of the case at bar, should judgment be entered in this action prior to the conclusion of the Minnesota action, the Minnesota district court is bound by this Court's judgment with regard to copyrightability, etc.

the validity of West's copyrights in West's annotated compilation of Texas statutes. As a general rule, non-parties to a litigation are *not* bound by the outcome of that litigation. *See Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974). If it is determined that the collateral estoppel effect of *Bancroft–Whitney* is indeed inapplicable to MDC, it will be because of the inherent injustice of binding a party without giving that party the opportunity to litigate. The possibility of inconsistent results is simply the price which must be paid for granting all parties the opportunity to be heard.

Based upon the foregoing, this Court cannot conclude that the existence of the *Bancroft–Whitney* action *in any way* compels this Court to transfer the case at bar to the District of Minnesota.

## C. SHOULD THE COURT EXERCISE ITS DISCRETION TO TRANSFER TO THE DISTRICT OF MINNESOTA UNDER § 1404(a) BECAUSE THE BALANCE OF CONVENIENCE FAVORS TRANSFER TO THAT FORUM?

West further argues that under the traditional transfer criteria this Court should transfer the case at bar to the District of Minnesota, for the District of Minnesota provides the most convenient forum. West places great emphasis upon the fact that this case is a broad attack upon West's business practices, covering virtually every facet of West's business. The crux of West's argument is that because West's operations are so crucial to the outcome of this action, the majority of witnesses will be West employees, living in Minnesota, and the majority of exhibits will be West documents, located in that state.

Section 1404(a) is an outgrowth of the old doctrine of *forum non conveniens. See Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). Though in enacting § 1404(a), Congress "intended to permit courts to grant transfers upon a lesser showing of inconvenience," the factors relevant to the doctrine of *forum non conveniens* have not

changed. *Id.* In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), the United States Supreme Court specified a number of the factors to be taken into consideration when applying the principle of *forum non conveniens.*

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* The Supreme Court also noted that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* While plaintiff's choice of forum is still a factor to be considered in ruling upon a motion to transfer, the enactment of § 1404(a) has given the trial court broader discretion. *Norwood,* 349 U.S. at 32, 75 S.Ct. at 546.

In ruling upon West's Motion to Transfer, this Court will consider each of the following factors: (1) the Plaintiff's choice of forum; (2) the relative ease of access to proof, including the convenience and proximity of witnesses and the location of documentary evidence; (3) the respective court's familiarity with applicable law; (4) the need for a view of the premises; and (5) the likelihood of expeditious hearing in the respective courts.

### 1. *The Plaintiff's Choice of Forum*

Despite the fact that the enactment of § 1404(a) may have lessened the weight to be given the Plaintiff's choice of forum, it is still a factor to be considered in determining the balance of convenience. The relative importance of MDC's choice of forum is strengthened by the fact that MDC is headquartered in Ohio. *See Cincinnati Milacron Industries v. Aqua Dyne, Inc.,* 592 F.Supp. 1113, 1118 (S.D.

Ohio 1984). The relative importance of MDC's choice is lessened somewhat by the fact that most, if not all, of the conduct complained of occurred outside the state of Ohio. *See Neff Athletic Lettering Co. v. Walters*, 524 F.Supp. 268, 272 (S.D.Ohio 1981). However, this fact is simply not sufficient to overcome the deference with which Plaintiff's choice of forum must be treated.

Based upon the foregoing, this Court concludes that the Plaintiff's choice of forum does not shift the balance of convenience in favor of the District of Minnesota.

### 2. *Ease of Access to Proof*
#### a. Witnesses

Defendant West has submitted a lengthy affidavit (Doc. # 11, Affidavit of Richard A. Lockridge) in support of its contention that the vast majority of the evidence at trial will consist of either West's documents or the testimony of key West personnel. West has also submitted an affidavit in support of its contention that the absence of key West personnel from West's corporate headquarters in St. Paul, Minnesota, would result in great hardship to the corporation (Doc. # 10, Affidavit of Dwight D. Opperman).

 There is no question that the "factors to be considered in ruling upon a *forum non conveniens* motion should include the availability of compulsory process to obtain the attendance of unwilling witnesses, and the costs of obtaining attendance of willing witnesses." *See AMF, Inc. v. Computer Automation, Inc.*, 532 F.Supp. 1335, 1341 (S.D.Ohio 1982) (*citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). The convenience of witnesses is also a factor to be considered. *Id.*

This Court is sympathetic to the problems facing West. However, for the following reasons, this Court cannot conclude that the ease of access to witnesses tips the balance of convenience in West's favor. First, the Court recognizes that West does have the power to compel its employee-witnesses to testify in Dayton. This is not a situation in which a party's case would be weakened by its inability to produce witnesses.

Second, transfer to the District of Minnesota would result in hardship to MDC. MDC has provided an affidavit in support of its contention that Plaintiff would be inconvenienced by a trial of this antitrust action in Minneapolis at least as much as West would be inconvenienced by a trial in Dayton (Doc. # 16, Exh. D, Affidavit of Nancy A. Nash). Many of MDC's employees would also be required to testify at trial. (Nash Affidavit, ¶ 10(b)). Transporting these witnesses to Minneapolis and providing them with proper accommodations would be costly to MDC. It cannot be doubted that a transfer to Minneapolis would disrupt MDC's business operations. Transfer would merely shift the inconvenience from West to MDC. Such a shift is simply not sufficient to merit transfer. *AMF, Inc.*, 532 F.Supp. at 1343. Accordingly, the Court concludes that transfer of this action to the District of Minnesota is not merited on the basis of factors related to ease of access to witnesses.

#### b. Documents

West further asserts that transfer herein is warranted because much of the documentary evidence is located at its headquarters in Minnesota. (Opperman Affidavit, ¶ 8). Defendant notes that several million documents have been requested by MDC and that "[a] great many of these documents are essential to West in carrying out its day-to-day operations." (Opperman Affidavit, ¶ 8). Once again, though sympathetic to West's plight, this Court cannot conclude that the difficulties facing West with respect to the transportation of documentary evidence tips the balance of convenience in favor of the District of Minnesota.

First, while MDC may well have requested several million documents during the discovery process, the vast majority of those documents will probably not be needed for trial. Further, the location of the trial is irrelevant with respect to MDC's review of these documents. *AMF, Inc.*,

532 F.Supp. at 1340. West will be forced to produce the same documents regardless of whether the trial occurs in Minnesota or Dayton.

Second, almost all of the documents required of MDC are located in Dayton, Ohio. (Nash Affidavit, ¶ 10(a)). Should this case be transferred to Minneapolis, MDC would be faced with the hardship of transporting its documentary evidence and the information requested by West to Minneapolis. Once again, the Court must conclude that transfer to the District of Minnesota would merely shift the inconvenience to MDC. It is true that West will quite probably have to produce more documents or copies than will MDC. However, this is not a situation in which the documents to be produced by either party are minimal.

The case at bar is extremely complex. Regardless of the location of the trial, one party will be inconvenienced. Transfer of this action would merely shift the inconvenience from West to MDC. Accordingly, this Court concludes that the relative ease of access to documents is not a factor which shifts the balance of convenience in favor of Minneapolis.

### 3. *The Remaining Factors*

None of the remaining factors (i.e., the respective court's familiarity with applicable law, the need for a view of the premises, and the likelihood of expeditious hearing in the respective courts) provides any basis for transfer to Minnesota. There is no evidence that the District Court for the District of Minnesota has greater familiarity with the law applicable to the case at bar. The actions currently pending before the Minnesota court are actions relating to the validity of copyrights, while the action currently before this Court is essentially an antitrust action. The law which is to be applied in the case at bar is national, not regional or local. Further, the case at bar presents no need for a view of premises. Finally, there is no evidence of any likelihood of an expeditious hearing of this case in the Minnesota court. As discussed *supra* there is virtually no possibility of joinder. Judicial economy and efficiency would not be served by requiring a transfer. Discovery in the Minnesota copyright action is set to be completed in November of 1987 and parties are to be prepared for trial by February of 1988. If anything, transfer at this point in time might well slow the progress of the case at bar. Accordingly, this Court concludes that no factors exist which shift the balance of convenience to the District of Minnesota.

### II. CONCLUSION

Based on the foregoing analysis, which indicates that transfer to the District of Minnesota is neither compelled nor warranted, the Court finds that Defendant's Motion to Transfer must be, and hereby is, denied.

This Court wishes to state, however, that it is sympathetic to the practical difficulties with which West is faced as a result of being involved in litigation on two fronts. The Court will do all that it can to lessen the inconvenience to West and is amenable to practical suggestions to accomplish that end.