**ROBERTS METALS, INC., Plaintiff,**

v.

**FLORIDA PROPERTIES MARKETING GROUP, INC., Defendant.**

**No. 5:91CV0014.**

United States District Court,
N.D. Ohio, E.D.

May 29, 1991.

Richard M. Klein, Fay, Sharpe, Beall, Fagan, Minnich & McKee, Cleveland, Ohio, for plaintiff.

Sidney W. Millard, Kremblas, Foster & Millard, Columbus, Ohio, for defendant.

BATCHELDER, District Judge.

## MEMORANDUM OPINION AND ORDER

### I. Introduction

This matter is before the Court on (1) the motion of the defendant, Florida Properties Marketing Group, Inc. ("FPM"), to dismiss, or in the alternative for transfer, or in the alternative for stay, and (2) FPM's motion to transfer under 28 U.S.C. § 1404(a). Before addressing the motions, it is necessary to discuss briefly the pleadings in the present case, and in litigation that is pending between these parties in Florida.

In the Florida litigation, FPM alleged in its complaint that it entered into a contract with the plaintiff in this case, Roberts Metals, Inc., ("RM"), whereby FPM would be the exclusive distributor of a golf-training club that RM manufactured (the "club" or "training club"). FPM alleged that there were manufacturing problems with the club, and many had to be returned to RM because they were unusable. FPM's complaint set forth causes of action for breach of contract and for injunctive relief. RM's answer alleged that it owned the rights

under United States Patent No. 4,854,585 (the "'585 patent") to a "golf swing training device including a two-way hinge mechanism interposed between the grip and head of a golf club shaft." RM alleged that there were problems with the training club, but denied that it was at fault. RM denied that an exclusive distributorship existed, and set forth several affirmative defenses. RM also pled a counterclaim in two counts, breach of contract and fraud. The fraud count alleged that in negotiating the original contract between the parties, FPM misrepresented its business experience, its expertise in marketing of products, and its financial standing and ability to carry out the contract. RM claimed that the purpose of FPM's misrepresentations was to hinder RM's business. For these actions RM demanded damages.

In the present action, RM has alleged in its complaint that it owns the patent rights to the training club under the '585 patent and that its application for the trademark "MEDICUS" for the training club is pending in the U.S. Trademark Office. RM alleges that FPM is manufacturing its own training club that infringes RM's patent, infringes RM's MEDICUS trademark, violates section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and constitutes unfair competition and deceptive trade practices under state law. RM requests injunctive relief and damages. As noted above, FPM has responded to the complaint with the current motions. Each of the motions is addressed below.

### II. Motion to Dismiss or to Transfer or to Stay

■ FPM has moved to dismiss RM's complaint on the ground that RM's claims should have been stated as compulsory counterclaims in litigation between these same parties that is pending in the Middle District of Florida.[1] The Court's analysis of this question must begin with an examination of the pertinent part of Federal Rule

---

1. Based on this same argument, FPM alternatively moves to transfer this suit to the Middle District of Florida, or further alternatively moves to stay this action until the Florida case has been adjudicated. Since each of the three motions is based on the same argument, the Court addresses the motions together.

of Civil Procedure 13(a), which provides as follows.

>   **(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

The Sixth Circuit has held that the test to be applied in determining whether a claim is a compulsory counterclaim under Rule 13(a) is "whether there is a logical relationship between the claim and counterclaim." *Maddox v. Kentucky Finance Co.,* 736 F.2d 380, 382 (6th Cir.1984); *see also United States v. Southern Construction Co.,* 293 F.2d 493 (6th Cir.1961), *rev'd in part on other grounds, Southern Construction Co. v. Pickard,* 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962). In determining whether a logical relationship exists, courts should consider (1) whether the claim and counterclaim will present different legal, factual, and evidentiary questions, and (2) whether the claims should be heard together in the interests of judicial economy and efficiency. *Maddox,* 736 F.2d at 383; *Mead Data Central, Inc. v. West Publishing Co.,* 679 F.Supp. 1455, 1458 (S.D.Ohio 1987).

■ Applying the first of these factors, it is clear that the contract and fraud claims (pending in Florida) present substantially different factual, legal, and evidentiary questions from those presented to this Court on the patent and trademark infringement claims. Questions that relate to the circumstances under which FPM and RM negotiated, signed, and carried out a contract pursuant to which FPM would market and sell golf training clubs manufactured by RM, differ markedly from those that may arise on RM's claim that FPM is now manufacturing, marketing, and selling FPM's own club in violation of RM's patent and trademark rights.

Second, the Court is not convinced that it would be in the interests of judicial economy and efficiency to hear these claims in a single court. To the contrary, it would appear to be more efficient, or at least much less confusing for the trier of fact, for these types of claims to be heard separately. The claims in Florida involve allegations by each side that the other breached a contract that concerned a golf training club whose key component was manufactured by RM. The claims pending in this Court surround FPM's alleged infringement of RM's intellectual property rights by FPM's sale of a golf training club that it manufactured itself.

Based upon a careful review of the parties' allegations in both this suit and in the Florida case, and careful consideration of the relevant factors, the Court has no difficulty in concluding that RM's claims in this Court fail to satisfy the logical relationship test. Therefore, FPM's motion to dismiss or transfer or stay this action based on the argument that RM's claims should have been pled as compulsory counterclaims in Florida, must be denied.

### III. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), FPM moves this Court to transfer this case to the United States District Court for the Middle District of Florida, where there is currently pending a case involving these same parties, No. 90–1480–CIV–T–98C.

### A. *Standards for Ruling on Motions for Transfer*

#### 1. Factors in Determining if Transfer is Appropriate

■ The change of venue statute provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is apparent from the language of the statute that several factors enter into the Court's consideration of a request for a change of venue: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the interests of justice; and (4) whether the civil action might have been brought in the district to which the movant

requests a transfer.[2] The language of the statute also indicates that the Court has broad discretion in ruling on such motions. *Mead Data Central, Inc. v. West Publishing Co.*, 679 F.Supp. 1455, 1457 (S.D.Ohio 1987) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955)). It is clear that the party requesting the transfer has the burden of showing that transfer is desirable. *Mead Data*, 679 F.Supp. at 1457. Determining the extent of that burden, however, is a more difficult task.

## 2. The Burden of Proof

Most often, courts analyzing the transfer question start with the proposition that the plaintiff's choice of forum is to be given great weight or substantial weight. 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3848 at 377 & 389 n. 21 (1986) [hereinafter "Wright & Miller"]. Those courts hold that the party moving for transfer must make a "strong showing" that the balance of convenience favors transfer in order to overcome the great weight given to plaintiff's choice of forum. *See id.* at 389 n. 21 (and cases cited therein). However, in light of the language of the statute itself and Supreme Court precedent, this Court believes that this standard is not well-grounded.

■ The "strong showing" standard has its roots in cases that treated section 1404(a) as a mere codification of the doctrine of *forum non conveniens.*[3] Wright & Miller, § 3848 at 391. But in 1955, the Supreme Court held that the intent of Congress in enacting section 1404(a) was not merely to codify that doctrine, but to "permit courts to grant transfers upon a lesser showing of inconvenience." *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). That decision casts considerable doubt on the proposition that the statute requires a strong showing to overcome plaintiff's choice of forum.[4] Wright & Miller, § 3848 at 392; *see Neff Athletic Lettering Co. v. Walters*, 524 F.Supp. 268, 272 (S.D.Ohio 1981).

Although the Sixth Circuit has held that a request for transfer pursuant to section 1404(a) should not be granted unless the balance of convenience is strongly in favor of the defendant, *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951), *Nicol* is one of the pre-*Norwood* cases that applied the "strong showing" standard because of its applicability in cases involving *forum non conveniens*[5] and, like the others cited in

---

**2.** Although not necessarily apparent from a strict reading of the statute, two additional factors that courts consider which are relevant to this case are the plaintiff's choice of forum, *e.g., Mead Data*, 679 F.Supp. at 1465, and the respective docket loads of the two district courts, *Fannin v. Jones*, 229 F.2d 368, 369 (6th Cir.), *cert. denied,* 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956); *Neff Athletic Lettering Co. v. Walters*, 524 F.Supp. 268, 274 (S.D.Ohio 1981); 15 C. Wright, A. Miller, & E. Cooper *Federal Practice and Procedure*, § 3854 at 456–60 (1986). These factors, along with the others, are discussed below.

**3.** The case most often cited in support of the strong showing standard is *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), a case decided under the doctrine of *forum non conveniens* and prior to the enactment of section 1404(a).

**4.** This Court concludes that plaintiff's choice of forum is only one factor to be considered in the transfer decision. *E.g., DeMoss v. First Artists Production Co.*, 571 F.Supp. 409, 413 (N.D.Ohio 1983); *Neff Athletic*, 524 F.Supp. at 272. This conclusion is also supported by a recent case in

which the Supreme Court dealt with a motion to transfer in the context of a contractual forum selection clause. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In that case, the Court cited *Norwood* and parenthetically indicated that it stands for the proposition that "§ 1404(a) accords broad discretion to District Court, and plaintiff's choice of forum is only one relevant factor for its consideration." *Id.* 108 S.Ct. at 2245.

**5.** The court in *Nicol* cited *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), in support of its conclusion that the movant's burden was to show that the balance of convenience weighed strongly in its favor. *Gulf Oil* was decided under the doctrine of forum non conveniens, not under 28 U.S.C. § 1404(a). As the Supreme Court subsequently made clear in *Norwood,* section 1404(a) is not a mere codification of the doctrine of forum non conveniens. *See* Wright & Miller, § 3848 at 389–92.

the Wright & Miller treatise, is not grounded in the language of the statute or in the holding of *Norwood.*[6] *See Mead Corp. v. Oscar J. Boldt Constr. Co.*, 508 F.Supp. 193, 198 (S.D.Ohio 1981) (concluding that plaintiff's choice of forum is not entitled to greater weight than other factors since the Supreme Court's *Gulf Oil* case was decided prior to the enactment of section 1404(a)). The Court therefore concludes that it is appropriate to apply a preponderance standard to the section 1404(a) analysis. *See Gdovin v. Catawba Rental Co.*, 596 F.Supp. 1325, 1326 & n. 1 (N.D.Ohio 1984) (applying a preponderance test on a motion to transfer); *but see Hanning v. New England Mut. Life Ins. Co.*, 710 F.Supp. 213, 214 (S.D.Ohio 1989) (holding that *Nicol* continues to be binding precedent in the Sixth Circuit). That is, the movant must show that the "forum to which he desires to transfer the litigation is the *more convenient one vis a vis* the plaintiff's initial choice." *Mead Corp.*, 508 F.Supp. at 198 (emphasis in original).

### B. *Application of the Transfer Rules to the Present Case*

Although the Court considers the movant, FPM, to have a lesser burden than the strong showing required by other courts, as noted above it is clear that FPM does have the burden of showing that transfer is appropriate. *See, e.g., Mead Data Central, Inc. v. West Publishing Co.*, 679 F.Supp. 1455, 1457 (S.D.Ohio 1987); *Gdovin v. Catawba Rental Co.*, 596 F.Supp. 1325, 1326 (N.D.Ohio 1984). RM concedes, and the Court concurs, that this case could have been brought in the Middle District of Florida, and therefore, that element is satisfied.

Although the choice of forum factor weighs in favor of denying the motion for transfer, plaintiff's choice is only one factor in the transfer decision. *E.g., DeMoss v. First Artists Production Co.*, 571 F.Supp. 409, 413 (N.D.Ohio 1983); *Neff*

*Athletic Lettering Co. v. Walters*, 524 F.Supp. 268, 272 (S.D.Ohio 1981). As the court stated in *DeMoss*, "Courts in this circuit do not assign the plaintiff's choice paramount importance, but simply treat it as one factor to be weighed equally with other relevant factors." 571 F.Supp. at 413. In the present case, although the weight given to plaintiff's choice of forum is diminished somewhat because some of the acts complained of occurred outside the State of Ohio, *Neff Athletic*, 524 F.Supp. at 272, plaintiff's choice must be accorded at least some additional weight since RM has its headquarters in Ohio. *Mead Data*, 679 F.Supp. at 1465; *see Cincinnati Milacron Indus. v. Aqua Dyne, Inc.*, 592 F.Supp. 1113, 1118 (S.D.Ohio 1984).

Regarding the convenience of the witnesses, FPM argues in its brief,

> The only witnesses to this action who are located within the State of Ohio are the two officers of the Plaintiff's corporation and the Ohio resident whose alleged purchase of a patented golf club from the Defendant is the basis for this cause of action. All other witnesses to this cause of action reside outside the State of Ohio and most of them reside within the State of Florida.

(Defendant's Memorandum in Support of Transfer Motion, Docket No. 11, at 5–6). First, such bare allegations unsupported by affidavit provide no factual basis on which to conclude that the convenience of the witnesses weighs in favor of transfer. Second, FPM fails to identify the witnesses in Florida and what their testimony would be *with respect to the patent and trademark infringement claims.* Finally, as other courts have noted, the movant's burden consists of more than simply asserting that another forum would be more appropriate for the witnesses; "he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." *Gdovin*, 596 F.Supp. at 1327; *see Weltmann v. Fletcher*, 431

---

**6.** The subsequent Sixth Circuit decision in *Lemon v. Druffel*, 253 F.2d 680, 685 (6th Cir.), *cert. denied*, 358 U.S. 821, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958), recognized that "[t]he choice of the forum by the petitioner is no longer as dominant a factor as it was prior to the ruling in *Norwood v. Kirkpatrick.*"

F.Supp. 448, 451 n. 3 (N.D.Ohio 1976). It is clear that FPM has not met this burden.

Regarding the convenience of the parties, FPM argues that if this matter were transferred to the Middle District of Florida, it would cause no inconvenience to the plaintiff since there is litigation already pending there between these parties. As RM correctly notes, however, these two lawsuits involve different legal and evidentiary issues, and may involve different witnesses. Thus, transferring this case may serve merely to shift the inconvenience from one party to the other, in which case transfer clearly would not be warranted. Wright & Miller, § 3848 at 386 & n. 20 (and cases cited therein); *see Mead Corp. v. Oscar J. Boldt Constr. Co.*, 508 F.Supp. 193, 199 (S.D.Ohio 1981). With respect to this factor, it is sufficient to note that FPM is the party with the burden of proof on the motion to transfer, and it has failed to present facts that would demonstrate that the convenience of the parties would be increased by transferring this case to Florida.[7]

Many elements may relate to the "interest of justice." Wright & Miller, § 3854 at 441. With respect to this factor, FPM submits that "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." (FPM's Brief in Support of Motion to Transfer, at 8, *quoting American Home Products Corp. v. Johnson & Johnson*, 668 F.Supp. 446, 448 (E.D.Pa.1987)). As noted earlier, the Court does not consider the present case and the Florida litigation to involve the same issues. Therefore, this

purported justification for transfer is inapplicable. *See Weltmann*, 431 F.Supp. at 452.

RM has raised the docket load of the Middle District of Florida as an element of the interest of justice, arguing that the situation in that court mitigates against transfer. Clearly, the respective docket loads of the district courts may appropriately be considered on a motion for transfer. *Fannin v. Jones*, 229 F.2d 368, 369 (6th Cir.), *cert. denied*, 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956); *Neff Athletic*, 524 F.Supp. at 274; Wright & Miller, § 3854 at 456–60. As the Sixth Circuit has stated, "A court should not under § 1404(a) look to docket conditions in order simply to serve the court's own convenience. A prompt trial, however, is not without relevance to the convenience of the parties and witnesses and the interest of justice." *Fannin*, 229 F.2d at 369. Although courts ordinarily consider this element by comparing official statistics of the relative docket loads of the two district courts, *e.g.*, *Neff Athletic*, 524 F.Supp. at 274, in the present case neither party has presented any statistical evidence. Rather, RM has presented two articles from the *Florida Bar News*, Feb. 1, 1991, which indicate that the United States District Court for the Middle District of Florida has halted all civil trials because of a burgeoning criminal docket. Although this type of evidence is not of a kind typically used when considering how soon a particular case may proceed to trial in either of two district courts, this Court considers it to carry some weight in the argument that transfer should be denied.[8]

Based on the foregoing discussion, it is clear that FPM has failed to carry its burden of proving that transferring this suit to

---

**7.** FPM also argues that all of its documents that might be of interest to plaintiff are located in Florida. Since FPM fails to give any indication of how many of its documents may be relevant to plaintiff's claims, however, this argument asks the Court to speculate that there would be many such documents and that it would necessarily be inconvenient for FPM to transport them to Ohio. Since there are no facts before the Court regarding the significance of the documents to this litigation, the Court is unwilling to speculate that the convenience of the parties

would be increased by transferring this case to Florida.

**8.** The Florida court's suspension of all civil trials has been well-publicized in the legal community, *e.g.*, Administrative Office of the United States Courts, *The Third Branch*, Vol. 23, No. 2 (Feb. 1991). Such a drastic move on the part of that district court provides an indication that this matter could proceed to trial in this Court more quickly than it would in the Middle District of Florida.

the Middle District of Florida would result in a more convenient forum than plaintiff's choice of this Court. Therefore, the motion to transfer this case pursuant to 28 U.S.C. § 1404(a) must be denied.

## IV. Conclusion

Based on the foregoing, the Court orders that FPM's motion to dismiss, or transfer, or stay this case is DENIED, and FPM's motion to transfer under 28 U.S.C. § 1404(a) is DENIED.

IT IS SO ORDERED.

