**REED ELSEVIER, INC.,**
**et al., Plaintiffs,**

v.

**INNOVATOR CORPORATION,**
**et al., Defendants.**

**No. C–3–99–141.**

United States District Court,
S.D. Ohio,
Western Division.

March 10, 2000.

Charles J. Faruki, Dayton, OH, J. Paul Williamson, Washington, DC, Katherine C. Spelman, San Francisco, CA, for Plaintiffs.

Thomas W. Flynn, Michael W. Krumholtz, Dayton, OH, Rochelle D. Alpert, San Francisco, CA, for Defendants.

## DECISION AND ENTRY OVERRULING MOTIONS TO TRANSFER VENUE (DOC. # 29, 30) FILED BY DEFENDANT INNOVATOR CORPORATION

RICE, Chief Judge.

This litigation stems from the Plaintiffs' allegation that the Defendants have violated state and federal law by "hijack[ing] and usurp[ing] Plaintiffs' famous trademarks[.]" (First Amended Complaint, Doc. # 9 at ¶ 3). In their ten-count Complaint, Plaintiffs Reed Elsevier, Inc., and Reed Elsevier Properties, Inc., allege that they own the exclusive right to three trademarks, "LEXIS," "NEXIS" and "LEXIS–NEXIS." (*Id.* at ¶ 1). These trademarks identify the Plaintiffs' computerized legal and business information research services. Their Complaint names three Defendants, Innovator Corporation ("Innovator"), AltaVista Company ("AltaVista") and DoubleClick, Inc. ("DoubleClick"). Innovator provides computerized information retrieval services in direct competition with the Plaintiffs. (*Id.* at ¶ 11). DoubleClick assists clients with the placement of advertising on Internet web sites and search engines. (*Id.* at ¶ 13). AltaVista operates a search engine which consumers use to locate web sites on the Internet. (*Id.* at ¶ 12). According to the Plaintiffs, individuals find web sites through "key word" searching. Seconds after a user enters a particular word or phrase, the AltaVista search engine furnishes a list of sites containing that word or phrase. (*Id.* at ¶ 17). The Plaintiffs use the LEXIS, NEXIS and LEXIS–NEXIS trademarks as key words to direct Internet users to their products. (*Id.*).

The present litigation concerns the Plaintiffs' assertion that Innovator, DoubleClick and AltaVista have improperly utilized the LEXIS, NEXIS and LEXIS–NEXIS trademarks. In particular, the Plaintiffs contend that "with the active participation of DoubleClick and AltaVista, [Innovator] bought Plaintiffs' famous marks and tradename as keywords so that whenever a user of the AltaVista search engine types in the marks LEXIS or NEXIS or LEXIS–NEXIS, AltaVista returns a screen positioning a[n] [Innovator] banner prominently ahead of, and many times larger than, the information provided regarding Plaintiffs and their marks." (*Id.* at ¶ 35). After discovering this practice, the Plaintiffs filed their Complaint, seeking relief under the Lanham Act, the

Ohio Revised Code and common law. Thereafter, the Plaintiffs entered into settlement agreements with AltaVista and DoubleClick, dismissing all claims against them, with prejudice. (Doc. # 45–46). As a result, Innovator is the only remaining Defendant in this litigation. Pending before the Court are two Motions to Transfer Venue (Doc. # 29, 30) filed by Innovator.[1]

## I. Analysis of Innovator's Motions to Transfer Venue (Doc. # 29, 30)

Innovator contends that the Court should transfer this action to the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 1404(a). Innovator's primary argument is two-fold. *First,* it contends that a settlement agreement, over which the District Court in Washington has retained jurisdiction, required the Plaintiffs to file this action in that venue and to provide advance notice before doing so. *Second,* it notes that it has commenced litigation in the Western District of Washington, alleging a breach of the settlement agreement, based upon the Plaintiff's filing of the present suit here, without providing advance notice. In addition to stressing these two related points, Innovator engages in a cursory review of several other factors which are relevant to the Court's § 1404(a) analysis.[2]

In response, the Plaintiffs insist that the present action does not violate the settlement agreement reached in the Western District of Washington. In a related argument, they insist that the Washington court did not retain jurisdiction over the causes of action raised in their Complaint.

Finally, the Plaintiffs recite various factors which are pertinent to a § 1404(a) analysis and insist that those factors do not favor a transfer of venue.[3]

■ After reviewing the parties' respective arguments, the Court concludes that Innovator has not met its burden of establishing that a transfer should be granted. Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought." When reviewing a motion to transfer under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir.1991), quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). District courts possess broad discretion to grant or deny a transfer under § 1404(a). *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir.1994).

With the forgoing considerations in mind, the Court rejects Innovator's request to transfer this action to the Western District of Washington. As a threshold matter, the Court finds unpersuasive Innovator's two primary arguments regarding the existence of a settlement agreement and the pending litigation in Washington. The record reflects that Innovator previously filed a lawsuit against Reed Elsevier, Inc., in the Western District of Washington on February 13, 1996,

---

1. The document bearing Doc. # 29 is actually a Motion by Innovator for Leave to File its Motion to Transfer Venue under seal. Accompanying Doc. # 29, and filed under seal, is an *unredacted* copy of Innovator's Motion to Transfer Venue. A review of the Court's docket sheet reveals that this unredacted Motion has been docketed as part of Doc. # 29. The docket sheet also reveals that Innovator has filed a *redacted* version of the same Motion to Transfer Venue, at Doc. # 30 and not under seal. Currently pending before the

Court, then, are two versions of the same Motion.

2. The other factors upon which Innovator relies include: (1) the location of witnesses and documents; and (2) the relative congestion of this Court's docket in comparison to that of the Western District of Washington.

3. Innovator has not filed a Reply Memorandum.

alleging false advertising, unfair competition, copyright infringement and violations of state law. Reed Elsevier counterclaimed for false advertising. (Kovanen declaration, Doc. # 29 at Exh. 1, ¶ 2).

Innovator and Reed Elsevier subsequently entered into a settlement agreement on June 3, 1998, resolving the Washington litigation. (*Id.* at ¶ 3). The agreement includes a reservation of jurisdiction which states:

> 13. *Choice of Law.* This Agreement shall be construed in accordance with the laws of the State of Washington. The U.S. District Court for the Western District of Washington will retain jurisdiction over any claims for breach of this agreement.

(*Id.* at ¶ 5).[4] Paragraph nine of the settlement agreement also provides a specific dispute resolution procedure "if either party believes that it has a claim that the other party has made false or misleading statements in advertising[.]" (*Id.* at ¶ 4).That procedure includes providing advance notice to the opposing party before commencing litigation. (*Id.*).

█ After entering into the foregoing agreement, the Plaintiffs commenced the present litigation, asserting claims against Innovator for trademark infringement, false designation of origin, trademark dilution, unjust enrichment, interference with business relations and conspiracy. (First Amended Complaint, Doc. # 9). Innovator argues that the Plaintiffs have filed the present lawsuit in violation of paragraph nine of the settlement agreement, which sets forth the specific dispute resolution procedure for claims of "false or misleading statements in advertising." (Doc. # 29 at 6–7). Innovator also suggests that the Plaintiffs have violated paragraph thirteen

by filing their lawsuit here when the Western District of Washington retained jurisdiction over "any claims for breach of this agreement." (*Id.* at 8) (suggesting that the Plaintiffs agreed to litigate their claims in Washington when they entered into the settlement agreement).

Upon review, the Court finds both of Innovator's arguments unconvincing. *First,* none of the causes of action contained in the Plaintiffs' first amended Complaint appear to be claims for "false or misleading statements in advertising." Courts interpreting the Lanham Act have distinguished trademark infringement and false designation of origin claims ("product infringement") from claims for false or deceptive representations in advertising ("false advertising"). *See, e.g., Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc.,* 926 F.2d 134, 139 (2nd Cir.1991); *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.,* 948 F.Supp. 400, 426 n. 25 (D.N.J.1996).

In the present case, the settlement agreement provides a specific dispute resolution procedure only for claims of "false or misleading statements in advertising." On its face, this language appears to encompass only "false advertising" claims. In reaching this conclusion, the Court recognizes that the phrase "false or misleading statements in advertising" is arguably somewhat broader than the phrase "false advertising." Thus, the former phrase might have been used in the settlement agreement specifically to bring trademark infringement and false designation of origin claims within its scope. On the other hand, the use of the phrase "false or misleading statements in advertising" might have been nothing more than an imprecise

---

4. Although Innovator Vice President David J. Kovanen quotes from the agreement in a sworn declaration, the company has failed to provide the Court with a copy of the agreement itself, citing confidentiality concerns. To the extent that Kovanen quotes from an agreement which is not before the Court as an authenticated document, however, his assertions are hearsay. For their part, the Plaintiffs have raised no objection to Kovanen's declaration and, in fact, quote from the same settlement agreement in their opposing Memorandum. Given that the Court has found Innovator's Motions to Transfer Venue unpersuasive, the Court will address its arguments regarding the settlement agreement, even though that document is not before the Court.

reference to "false advertising" claims. A review of the settlement agreement itself may or may not clarify this issue. Unfortunately, Innovator has failed to provide the Court with a copy of that document. Absent some basis for concluding otherwise, the Court interprets the language in paragraph nine, regarding claims for "false or misleading statements in advertising," as being synonymous with claims for "false advertising." Under that interpretation, the Plaintiffs' claims in the present case fall outside the scope of the dispute resolution procedure set forth in the Washington settlement agreement. Consequently, to the extent that Innovator relies upon the Plaintiffs' breach of the settlement agreement as a basis for transferring venue, he has failed to establish such a breach.[5]

*Second,* the Court finds unpersuasive Innovator's suggestion that the Plaintiffs have violated paragraph thirteen of the settlement agreement by filing suit in this judicial forum. As noted, *supra,* paragraph thirteen gives the District Court for the Western District of Washington jurisdiction over any claims "for breach of th[e] [settlement] agreement." This language plainly encompasses Innovator's pending Washington action, which alleges that the Plaintiffs violated the agreement's dispute resolution procedure by pursuing this litigation. Without question, Innovator's lawsuit includes a claim *for* breach of the settlement agreement. It is not apparent, however, that the Plaintiff's present lawsuit includes any claims *for* breach of the settlement agreement by Innovator. The Plaintiffs allege that Innovator unfairly benefitted from the LEXIS, NEXIS and LEXIS–NEXIS trademarks by posting competitive banners on Internet web sites. Without reviewing the settlement agreement, the Court cannot possibly conclude that Innovator's actions violate its terms. In other words, the Court has no way of knowing whether the parties' agreement prohibited Innovator from posting its banners. While possibly prohibited by state and federal law, if Innovator's conduct was not prohibited by the agreement, then the present action does not involve claims *for* breach of that agreement. And if the Plaintiffs' lawsuit is not one *for* breach of the agreement, then the Western District of Washington did not retain jurisdiction over it.[6] Consequently, insofar as Innovator relies upon the Plaintiffs' violation of paragraph thirteen as a basis for transferring venue, no such violation has been shown, and the Court finds its argument unpersuasive.[7]

5. For present purposes, the Court need not resolve the breach of settlement agreement issue definitively. As noted above, Innovator has a lawsuit pending against the Plaintiffs in the Western District of Washington for breach of the settlement agreement, based upon their filing of the present action. Thus, the Washington court can determine, after reviewing the settlement agreement in its entirely, whether the Plaintiffs should have utilized the dispute resolution procedure prior to commencing the present action. Nothing contained herein should be construed as resolving that issue with finality or having any preclusive effect on the action pending in the Western District of Washington. The Court has addressed the Plaintiffs' alleged breach of the settlement agreement only because Innovator cites that alleged breach in support of its Motions to Transfer Venue.

6. It is possible that the Plaintiffs filed the present action *in violation of* the settlement agreement, even though they have not asserted claims *for* a violation of that agreement.

This would be the result if, for example, the Plaintiffs claims are subject to the dispute resolution procedure (as claims for "false or misleading statements in advertising") but do not allege a violation of the agreement by Innovator (if the agreement itself did not prohibit Innovator from placing its banners). Under such circumstances, the Plaintiffs would have violated the settlement agreement by not attempting to resolve their dispute amicably before commencing this litigation. At the same time, however, the Washington court's retention of jurisdiction would be irrelevant, because it only retained jurisdiction over claims *for* a violation of the agreement. As a result, the Washington court ultimately might impose a contempt sanction for the Plaintiffs' failure to follow the dispute resolution procedure, even if, as it appears, their present claims do not allege a violation of the settlement agreement by Innovator.

7. Despite the foregoing conclusions, the existence of pending litigation in Washington re-

■ In a final argument, Innovator suggests that a transfer of venue to the Western District of Washington is warranted because: (1) it is a resident of Washington; (2) it placed its advertising on a computer "server" in California; (3) it entered into its contract with AltaVista in either California or Washington; (4) witnesses and documents related to its advertising are located in Washington or California; and (5) this Court's docket is more congested than that of the District Court for the Western District of Washington.[8]

Upon review, the Court concludes that the foregoing assertions do not support a transfer to the Western District of Washington. At the outset, the Court notes that the Plaintiffs' choice of forum, while not dispositive, "should be given weight when deciding whether to grant a motion to change venue...." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir.1998). While litigating in Washington may be more convenient for Innovator, a resident of that state, litigating in

Ohio will be more convenient for the Plaintiffs, given that Reed Elsevier, Inc., has its principal place of business in Miamisburg, Ohio. (Doc. #9 at ¶9; Jacobs affidavit, Doc. #39 at Exh. C, ¶3). "The venue transfer provisions of Section 1404(a) [are] not meant to merely shift the inconvenience to the plaintiff." *Bacik v. Peek*, 888 F.Supp. 1405, 1415 (N.D.Ohio 1993), citing *Van Dusen v. Barrack*, 376 U.S. 612, 645–646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient.").

Furthermore, the Court does not find a transfer warranted, based upon the fact that Innovator placed its banner advertising from California, or the fact that it entered into a contract in either California or Washington. To the extent that Innovator alleges the occurrence of such activities in California, it is not clear to the Court why contracting or advertising in that state would support a change of venue

mains a relevant consideration. In *Cherokee Export Co. v. Chrysler International Corp.*, 142 F.3d 432, 1998 WL 57279 (6th Cir.1998), for instance, the Sixth Circuit recognized that "equitable concerns and the conservation of resources" may favor transferring a case to a venue where a related action is pending. In that case, however, the same claim involving the same facts was pending in the transferee jurisdiction. In the present case, Innovator's Washington action is one for breach of the settlement agreement, based upon the Plaintiffs' failure to provide notice before commencing this action. As explained, *supra*, at footnote six, it does not appear that the issues in that case will overlap significantly with the issues in this litigation. The central issue in the Washington action is whether the Plaintiffs violated the settlement agreement's dispute resolution procedure by not giving notice before commencing this litigation (because their claims allegedly are for "false or misleading statements in advertising"). That issue simply does not appear to be relevant in this litigation, which involves the Plaintiffs' substantive trademark-related claims against Innovator. As noted, *supra*, even if the Plaintiffs did fail to comply with the dispute resolution process established by the Washington court, this Court has seen no evidence to suggest that the Washington court retained jurisdiction over the claims raised by the

Plaintiffs herein (i.e., Innovator has not demonstrated that the present action alleges its violation of the agreement, as opposed to its violation of federal and state law).

8. Innovator's arguments generally track the criteria that this Court has considered in the past when reviewing motions brought under § 1404(a). The relevant considerations vary somewhat from case to case, because each transfer decision involves its own unique set of circumstances. Factors which are often relevant, however, and which the Court has deemed significant in the past, include: "(1) the Plaintiff's choice of forum; (2) the relative ease of access to proof, including the convenience and proximity of witnesses and the location of documentary evidence; (3) the respective court's familiarity with applicable law; (4) the need for a view of the premises; and (5) the likelihood of expeditious hearing in the respective courts." *Mead Data Central, Inc. v. West Publishing Co.*, 679 F.Supp. 1455, 1465 (S.D.Ohio 1987) (Rice, J.); *see also Cherokee Export Co. v. Chrysler International Corp.*, 142 F.3d 432, 1998 WL 57279 (6th Cir.1998) (recognizing that a court may consider any factor making litigation "easy, expeditious, and inexpensive"). In the present case, the need for a view of the premises does not appear to be relevant. Consequently, that factor will not be discussed.

to Washington. In any event, even if Innovator entered into its contract with Alta-Vista in Washington (a fact about which Innovator itself is not certain), relevant information regarding the alleged harm to the Plaintiffs, as a result of that contract, is found at the LEXIS–NEXIS corporate headquarters in the Southern District of Ohio. (Jacobs affidavit, Doc. # 39 at Exh. C, ¶ 5).

With respect to Innovator's argument that many of its witnesses and relevant documents are located in California or Washington, the Court notes that the company has not provided any evidentiary support for this contention. In contrast, the Defendants have provided the Court with an affidavit from Michael A. Jacobs, the Vice President and General Counsel of LEXIS–NEXIS, who avers that most, if not all, of the Plaintiffs' relevant documents and witnesses are located in Ohio. (Doc. # 39 at Exh. C, ¶ 5¢—6), Consequently, even if it is true that Innovator's documents and witnesses are located in California or Washington, a transfer to the Western District of Washington merely would shift the inconvenience from Innovator to the Plaintiffs. As noted, supra, § 1404(a) is not intended to shift the burden of litigating from one party to another. Finally, the Court notes that "[t]he location of documents will rarely weigh in favor of transfer because documents may be easily photocopied and shipped to wherever the documents are needed." Armco, Inc. v. Reliance Nat. Ins. Co., 1997 WL 311474 (S.D.Ohio May 30, 1997) (Dlott, J.).

The Court also finds nothing in the record to suggest that the "interests of justice" would be better served by transferring the present action to the Western District of Washington. The Defendants do not contend that the Washington court has a better grasp of the Lanham Act or Ohio law. Innovator does assert, however that the present lawsuit might be resolved more expeditiously in the Western District of Washington. Although congestion of a court's docket is a relevant consideration, that factor does not tip the balance in favor of a transfer, even assuming that

Innovator is correct, in light of other considerations addressed, supra. In short, the Court is unpersuaded by Innovator's arguments that this action should be transferred to the Western District of Washington, pursuant to 28 U.S.C. § 1404(a). Innovator has not demonstrated that a transfer " 'is warranted by the convenience of parties and witnesses and promotes the interest of justice.' " Mead Data Central, 679 F.Supp. at 1457, quoting Van Dusen, 376 U.S. at 616, 84 S.Ct. 805.

## II. Conclusion

Based upon the reasoning set forth above, and in the exercise of its discretion, the Court hereby overrules Innovator's Motions to Transfer Venue (Doc. # 29, 30).