NCR CORPORATION, Plaintiff,

v.

FIRST FINANCIAL COMPUTER SERVICES, INC., Defendant.

No. 3:03cv148.

United States District Court, S.D. Ohio, Western Division.

July 5, 2007.

Susan Russell Chema, NCR Corporation, Dayton, OH, Richard P. Campbell, Freeman Freeman & Salzman, Chicago, IL, James T. Malysiak, Lee A. Freeman, Jr., for Plaintiff.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO TRANSFER (DOC. # 15–2), AND OVERRULING DEFENDANT'S MOTIONS TO DISMISS (DOC. # 15–1) OR STAY (DOC. # 15–3) AS MOOT; TERMINATION ENTRY

RICE, District Judge.

This case involves the proverbial "race to the courthouse" and, here, Defendant is the winner of the race. Plaintiff NCR Corp. ("Plaintiff" or "NCR" herein), is a corporation whose business includes producing, marketing and servicing transaction processing equipment used by banks and other financial services firms. Defendant First Financial Computer Services, Inc. ("Defendant" or "First Financial" herein), is a company that provides repairs and service for a number of NCR's check-processing machines. On April 28, 2003, First Financial filed a complaint in the United States District Court for the Eastern District of Texas (the "Texas court" herein), alleging, *inter alia,* violations of federal antitrust laws. The basis for those claims, was, *inter alia,* NCR's alleged refusal to allow First Financial to obtain diagnostic software that is necessary to perform service on some of the machines serviced by First Financial. Thereafter,

on May 1, 2003, NCR filed the action herein, alleging that First Financial has used its diagnostic software without permission, thereby infringing its copyright, in violation of 17 U.S.C. § 101, *et seq.*, and also alleging that First Financial tampered with and removed an automatic expiration feature included in some versions of NCR's software, in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.* NCR seeks declaratory, injunctive and legal relief. Finally, on June 27, 2003, First Financial filed its First Amended Complaint in the Texas court, including a declaratory judgment action alleging, *inter alia,* that NCR does not hold a valid copyright in the diagnostic software or, in the alternative, that "NCR is estopped from relying on its copyright to the exclusion of First Financial or has waived any right to rely on same" (Doc. # 15 Ex. 4 at ¶ 87).

This matter is currently before the Court on First Financial's Motion to Dismiss, Transfer or Stay (Doc. # 15). First Financial argues that, pursuant to the first-to-file doctrine, the present action should be transferred to the Texas court so that it may decide the copyright issues raised herein in conjunction with the related antitrust issues. For the reasons stated herein, First Financial's motion is sustained.

■ The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment. *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.,* 2001 WL 897452, *3 (6th Cir.2001), *quoting In re Burley,* 738 F.2d 981, 988 (9th Cir.1984). This doctrine has deep roots, in that the Su-

preme Court recognized nearly ninety years ago that "where the same matter is brought before courts of concurrent jurisdiction, the one first obtaining jurisdiction will retain it until the controversy is determined." *Pacific Live Stock Co. v. Lewis,* 241 U.S. 440, 447, 36 S.Ct. 637, 60 L.Ed. 1084 (1916).

■ District courts have used three factors in order to determine whether the first-to-file rule warrants the invocation of their discretion to transfer a case. These are: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake. *Plating Resources, Inc. v. UTI Corp.,* 47 F.Supp.2d 899, 903–04 (N.D.Ohio 1999), *citing Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625–26 (9th Cir.1991).

■ As to the first factor, First Financial filed its original Complaint in the Texas court before NCR filed the present matter in this Court. NCR insists that it filed its copyright claims in this Court two months before First Financial filed its amended complaint in the Texas court, but for purposes of the first-to-file chronology, the date that an original complaint is filed controls. *Zide,* 2001 WL 897452 at *3. *See also Plating Resources,* 47 F.Supp.2d at 904; *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 424 (2d Cir.1965). This interpretation of the chronology is highly sensible. First Financial amended its Complaint in the Texas within the strictures of Federal Rule of Civil Procedure 15. Thus, the action in the Texas court was the first suit that made possible the presentation of all the issues between the parties and which, by amendment, did raise all the substantial issues between the parties. *See id.*

As to the second factor, there is no dispute. This is because both suits involve the same two parties.

■ The lion's share of the dispute between First Financial and NCR herein is the similarity of the issues at stake. NCR believes that the issues between the two suits are dissimilar. Specifically, it contends that the case in this Court "focuses on First Financial's *use* of NCR's diagnostic software and is governed by the federal copyright laws [and] raises *no* antitrust issues, whereas First Financial's Texas case focuses on NCR's *use*, not First Financial's use, of NCR's diagnostic software under the federal antitrust laws [and] involves *no* copyright issues" (Doc. # 29 at 1, emphasis in original). This formulation is erroneous for a number of reasons. *First*, First Financial's Amended Complaint in the Texas court *does* specifically raise copyright issues by asking that court to declare NCR's copyrights to be invalid, or in the alternative, to hold that NCR is estopped from asserting its rights under the federal copyright laws.

*Second*, in a general sense, copyrights are, conceptually, related to the concerns animating the antitrust laws. This is because copyright protections serve the stated purpose of granting the creator/owner of the copyrighted work a monopoly as to the use and reproduction of that work. This case illustrates that concept perfectly, because, for example, if it is true that NCR holds a legitimate copyright in the diagnostic software (and is not estopped from asserting the exclusive rights held by all copyright holders) then it can be said that it holds a state-sanctioned monopoly in that software and is legally entitled to exclude all others (including First Financial) from its reproduction and distribution, and, in general, to enjoy all the other exclusive rights in copyrighted works, pursuant to 17 U.S.C. § 106. If, on the other hand, NCR does not hold a legitimate copyright in the diagnostic software (or it does, but is estopped from asserting its exclusive rights) then it enjoys no rights under federal copyright law to exclude others from the software. As First Financial has noted, "[d]etermination of [its antitrust] claims [in the Texas court] will necessarily involve determinations regarding the validity and enforceability of NCR's copyrights" (Doc. # 20 at 8).

*Third*, and relatedly, the fact that the suit in the Texas court involves "NCR's *use*, not First Financial's use, of NCR's diagnostic software" is a distinction without a difference. The substantially overlapping issues in the two cases concern who may properly use (or prohibit the use of) the diagnostic software consistent with federal antitrust and copyright laws—whether it is NCR, First Financial or both. As First Financial has noted, the critical issue in both cases is whether NCR may restrict access to its software, and in that regard, the two suits are the converse of each other (Doc. # 15 at 10).

Furthermore, by way of a Supplemental Memorandum, First Financial informed the Court of filings by NCR in the Texas court that effectively concede that it agrees that issues pertaining to its copyright of the diagnostic software will figure prominently in the antitrust litigation. Specifically, in a motion to dismiss filed in the Texas court, NCR explained that "[First Financial's antitrust accusations against NCR] boil down to NCR's refusal to authorize First Financial to use NCR's diagnostic software" (Doc. # 28, Ex. 1 at 2). As indicated *supra*, the validity of NCR's copyrights and the assertion of its rights therein are inseparable from its alleged refusal to authorize First Financial to use the diagnostic software.

Nonetheless, NCR relies heavily on this Court's decisions in *Mead Data Central, Inc. v. West Publishing Co.*, 679 F.Supp. 1455 (S.D.Ohio 1987) and *Reed Elsevier, Inc. v. Innovator Corp.*, 105 F.Supp.2d 816

(S.D.Ohio 2000) for the proposition that transfer is inappropriate. However, reliance on these decisions is misplaced for a number of reasons. In *Mead,* Mead had brought an antitrust action in the Southern District of Ohio against West, and West moved the Court to transfer the action to the District of Minnesota, where it had filed a copyright infringement case against Mead. In denying the motion, the Court noted that copyright law would not be the focus of the antitrust case, whose factual issues were "quite broad." 679 F.Supp. at 1461. As noted herein, however (and, as apparently admitted by NCR to the Texas court), issues surrounding NCR's purported copyright in the diagnostic software will figure prominently in the antitrust litigation in Texas. *Reed Elsevier* is also inapposite to this case. In that case, the defendant in a trademark suit sought to transfer the matter to the Western District of Washington. As the Court noted, however, there was minimal overlap of issues, in that the Washington case involved an alleged violation of a prior settlement agreement's dispute resolution procedure, whereas the Ohio case involved substantive trademark-related claims against the defendant. 105 F.Supp.2d at 820 n. 7. Since the Court believes that the issues herein are much more inter-related than those in *Reed Elsevier*, it does not consider the decision from that case to be instructive here.[1]

Further, as First Financial points out, most of the cases relied upon by NCR (including especially *Mead* and *Reed Elsevier*) actually dealt with a motion to transfer venue under 28 U.S.C. § 1404(a), and not a motion to transfer under the first-to-file doctrine.[2] The former type of motion asks a court to transfer a proceeding for the convenience of the parties, whereas the latter is a doctrine rooted in judicial comity. As noted *supra,* the first-to-file doctrine is designed to give courts discretion to decline to exercise jurisdiction in a case whose issues are already substantially implicated in a previously filed action in a court of concurrent jurisdiction. *See Abbott Laboratories, Inc. v. Mead Johnson & Co.,* 1998 WL 416758 (S.D.Ohio 1998). Although the first-to-file doctrine need not be utilized rigidly, *see Zide, supra,* and it should not totally disregard notions of convenience, the Court does not view any concerns of convenience herein to weigh in any substantial fashion against the result reached by applying the first-to-file rule, which is to transfer this matter to the Eastern District of Texas. Instead of convenience of the litigants, the value most cherished by the first-to-file doctrine is comity among the courts with cases containing substantially similar issues. For all the reasons provided herein, the Court believes the copyright action in this matter to be part and parcel with the antitrust action in Texas, and First Financial's Motion to Transfer (Doc. # 15–2) is

---

1. NCR cites other decisions that it believes support overruling First Financial's Motion to Transfer—in some cases because the court declined to transfer under circumstances NCR believes to resemble those in this case, and in some cases because the court did transfer under circumstances NCR believes to be distinguishable from this case (Doc. # 17 at 6–9). Its analysis in each instance, however, rests on the faulty belief that the issues in this case are wholly unrelated to the issues in the Texas case. As explained *supra,* the Court

believes the issues in the two cases to be quite closely related.

2. Further, *Mead* also considered and rejected arguments that the plaintiff's claims were compulsory counterclaims in the court to which the defendant sought transfer and that a prior decision from a New York federal court mandated transfer as a matter of collateral estoppel. These issues, too, are obviously not present here.

therefore sustained. As such, its Motions to Dismiss (Doc. # 15–1) or Stay (Doc. # 15–3) are overruled, as moot.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.